(C.D. 2094)

CANADA DRY GINGER ALE, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 23, 1959)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar, invoiced as ginger ale extract, was classified for duty under paragraph 24 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 15 cents per pound and 9 per centum ad valorem as a flavoring extract

(1)

containing not over 20 per centum of alcohol. Plaintiff herein claims the said merchandise properly classifiable under paragraph 39 of the act, as modified, *supra*, at the rate of 7½ per centum ad valorem as a flavoring extract "not containing alcohol, and not specially provided for."

Irving Sporn, a Government chemist employed at the United States Customs Laboratory, New York City, testified that the United States Customs Laboratory has a standard procedure for determining the presence and quantity of alcohol present in a flavoring extract, and that that procedure was followed in analyzing the sample of the imported merchandise. A report of the analysis of a sample of the imported merchandise so made indicates the presence of 0.49 per centum of alcohol by weight (plaintiff's exhibit 1). The witness was of the opinion that, based on his experience, the presence of the 0.49 per centum of ethyl alcohol by weight in the imported product would have no effect on the preservation of the imported flavoring extract (R. 14). He testified that the presence of alcohol in some flavoring extracts serves to solubilize a water insoluble ingredient. This is true in the case of certain volatile oils, which normally would not be soluble in aqueous solution without the presence of a significant amount of alcohol, stated by the witness to be in excess of 10 per centum. However, the quantity of alcohol present in the imported product performs no such function (R. 14–15). The witness further stated that he knew of no commercial purpose the quantity of alcohol found in the imported product could serve.

George A. Beatty, holder of a degree in chemical engineering, testified that he was associated with the research and products control department of the plaintiff concern, and that such division checks the flavor and quality of all the raw materials and finished products used by the company, including extracts. He stated that this checking operation had been performed in the case of the imported product. The witness further testified that he had developed the process for combining ginger ale extract with flavoring oils, describing the process as follows:

The process consists of the extraction of ginger root, that is the removal of the flavoring constituent by means of alcohol. These flavoring constituents in alcoholic solution are concentrated to obtain a ginger extract. This ginger extract is then mixed with other flavoring oils and essences to constitute a ginger ale extract. (R. 21.)

Mr. Beatty then stated that the normal quantity of ethyl alcohol found in the completed ginger ale extract is "usually less than 1 percent by volume" (R. 21); that, after importation, the ginger ale extract is used with sugar sirup "to introduce the flavor into the syrup"; and that the sirup is then used with carbonated water to make the final Canada Dry ginger ale. As had the previous wit-

ness, Mr. Beatty testified that the alcohol present in the imported merchandise served no useful purpose or function, stating, in this connection, that it is necessary to use alcohol in the initial process to obtain the ginger ale extract, i.e., in order to extract the flavor from the ginger root, but that, aside from such use, the alcohol present did not add anything to the ginger ale extract, but was merely "left over" from the process and did not act as a preservative (R. 23).

Plaintiff, in the case at bar, maintains that the proportion of alcohol contained in the imported product is so insignificant that it should be ignored in determining the proper classification of the involved merchandise, referring in this connection to the "rule" *de minimis non curat lex* (The Law Takes No Account of Trifles). The principal application in customs practice of the above maxim is, of course, in determining whether some component of an imported commodity is too insignificant to affect the tariff classification of that commodity. There is, however, no mathematical formula of general application for determining the amount of proportion of a component below which it becomes insignificant. The question must be answered in each case on the basis of the character of the commodity and the language and purpose of the pertinent tariff provisions. *Bullocks, Inc.* v. *United States*, 26 C.C.P.A. (Customs) 15, T.D. 49558. However, counsel for the plaintiff in their brief direct our attention to certain decisions of this and our appellate court, hereinafter referred to, wherein the rule of *de minimis non curat lex* was invoked.

In *United States* v. *McLaughlin & Freeman*, 13 Ct. Cust. Appls. 404, T.D. 41324, certain sweetened chocolate, containing 37.75 per centum of chocolate, 0.60 per centum of almonds, 60 to 61 per centum of sugar, and 1 to 2 per centum of honey, was held properly classifiable as "sweetened chocolate" under paragraph 775 of the Tariff Act of 1922, rather than under paragraph 505 of said act under a provision therein for "all confectionary," the court, in this connection, stating, page 406, as follows:

The importation is sweetened chocolate which contains 0.6 of 1 per centum by weight of crushed almonds. That small percentage of almonds was probably added for flavoring purposes, but whether it was or not, it can not be said the almonds were a distinctive feature of the product or that their introduction created a product which was not entitled to bear the name of sweetened chocolate. Six-tenths of 1 per centum by weight of almonds was negligible in the commodity and no more removed the commodity from the common understanding of chocolate than would the addition of 0.6 of 1 per centum of vanilla extract or almond oil.

In *C. J. Tower & Sons* v. *United States*, 34 Cust. Ct. 55, C.D. 1678, certain pyrite concentrate, classified as "pyrites," which are entitled to free entry under paragraph 1777 of the Tariff Act of 1930, was treated by the collector as a "lead-bearing" ore. Duty upon the lead

content of the commodity at the rate of three-fourths of 1 cent per pound was accordingly imposed under paragraph 391 of said act providing for "lead-bearing ores." It was stipulated between the parties therein that the percentages of lead present in the several importations varied from 0.09 to 0.1 of 1 per centum, and that the merchandise in question did not contain any lead which was commercially recoverable. The Customs Court, one judge dissenting, in holding as a matter of law that the involved merchandise was not a lead-bearing ore, which would render it subject to duty, stated, page 63, as follows:

> However, our main concern here is whether or not the imported pyrite concentrate is, in fact, a lead-bearing ore within the scope of that term, as used in paragraph 391, *supra*. We believe that question is resolved by the unrefuted testimony of experienced men who are learned in the sciences dealing especially with geology, metallurgy, and mineralogy to the effect that the importations are not lead-bearing ore, in fact or in any true sense of the term, and we so find. The amount of lead present is what scientists would characterize as a mere trace, which is regarded as a negligible quantity, and, under the rule *de minimis*, should be ignored in the classification of the merchandise.

In *P. R. Dreyer, Inc.* v. *United States*, 4 Cust. Ct. 113, C.D. 301, certain origanum oil, containing a slight impurity of about one-half of 1 per centum of orthocresol, was held properly free of duty under paragraph 1731 of the Tariff Act of 1930 for "Oils, distilled or essential: * * * origanum" and not subject to duty under paragraph 60 of said act for "mixtures or combinations containing essential or distilled oils." The witnesses for the plaintiff concluded that the merchandise imported was natural origanum oil made from the plant of that name, whereas the Government's witnesses reached the conclusion that, due to the presence of ¼ or ½ per centum of orthocresol, the merchandise was synthetic origanum oil, made in whole or in part from coal tar, and, therefore, was characterized by them as a mixture of aromatic chemicals. Under the facts of the case, the Customs Court followed the *de minimis* rule. This holding, however, was reversed on appeal. *United States* v. *P. R. Dreyer, Inc.*, 28 C.C.P.A. (Customs) 325, C.A.D. 162, one judge dissenting. The majority, after an analysis of the testimony therein, stated, page 342:

> We have weighed the testimony and considered every phase of it, and we cannot escape the conclusion that the record shows that the Spanish merchandise contained orthocresol and that the presence of orthocresol suggests definitely that such merchandise was either a mixture containing carvacrol made synthetically from some coal-tar distillate or that it was wholly a synthetic product made from orthocresol.
>
> We agree with the contentions of the Government that the significance of one-quarter to one-half of 1 per centum of orthocresol does not rest in its quantity in the imported merchandise, but in the fact that it was present. * * * If the carvacrol came from any other source than from the plant, it follows, we think, that under the proof as a whole the Spanish importation must necessarily be a mixture of some kind, containing artificial carvacrol, or a straight synthetic origanum oil (one of Government's witnesses referred to it as "out and out

synthetic") made from a coal-tar product and which contains traces of ortho-cresol.

and, at pages 343 to 344:

* * * The optical rotation test of the Moroccan oil shows that there was some foreign substance in it which was not in the natural Moroccan oil made from the plant, and it follows that the imported Moroccan oil was either a mixture embracing ingredients which are not contained in natural organum oil or was a straight synthetic product.

  *　　　*　　　*　　　*　　　*　　　*　　　*

* * * Assuming, however, that it is contended here that since the proof shows that the merchandise is either a mixture or a straight synthetic product, it comes within free list paragraph 1731, it is, in our judgment, sufficient to say that if appellee has failed to show that the importations should not be classified as mixtures within paragraph 60 as classified by the collector, it follows, of course, that it has not proved that they should be regarded as free merchandise under paragraph 1731.

Plaintiff cites as decisive of the issue herein the holding of this court in *R. W. Gresham* v. *United States*, 3 Cust. Ct. 308, C.D. 263, decided December 12, 1939. There, an importation of ginger beer flavor, classified for duty under the modified provisions of paragraph 24 of the Tariff Act of 1930 for "Flavoring extracts, and natural or synthetic fruit flavors * * * all the foregoing and their combinations, containing 20 per centum of alcohol or less," was claimed properly dutiable under paragraph 39 of the act here in issue, providing for such products when not containing alcohol. The merchandise there involved in its imported condition contained sixteen one-hundredths of 1 per centum of alcohol, it further appearing that the product in question was bought as nonalcoholic and that it was sold as a beverage after mixing 3 ounces of the imported article with 6 gallons of water. The court therein, in holding the merchandise properly dutiable as claimed, stated, page 309:

This case seems to be one where the rule "De minimis non lex curat" should be applied. The amount of alcohol is not substantial.

A substance such as this does not come within the purpose of Congress in applying the higher rates of paragraph 24.

In support of the collector's classification, the defendant makes reference to the holding in *Vandegrift & Co.* v. *United States*, 3 Ct. Cust. Appls. 176, T.D. 32462. The issue there was whether certain wine was dutiable under paragraph 307 of the Tariff Act of 1909 for "Still wines * * * if containing more than fourteen per centum of absolute alcohol," it appearing that the commodity contained an excess over 14 per centum, varying from eighteen one-hundredths of 1 per centum to seventy-five one-hundredths of 1 per centum of absolute alcohol content. The importer maintained, in this connection, that wine containing more than 14 per centum of absolute alcohol was, from a commercial standpoint, such wine as was

fortified by the addition of alcohol, whereas the importation in question was "unfortified" wine, properly assessable at only 45 cents per gallon under the act as still wines, containing 14 per centum or less of absolute alcohol. In rejecting the application of the rule *de minimis non curat lex* to the imported merchandise, our appellate court, in the *Vandegrift* case, *supra*, pages 177–178, stated:

The testimony further shows that the human equation, so-called, would not amount to more than a variation of one one-hundredth or two one-hundredths of 1 per cent, so that the maxim *de minimis non curat lex* can not be applied to this case. We have a case in which there is an ascertainable excess over 14 per cent of absolute alcohol.

The only question, therefore, becomes one of law, which is whether, in view of the plain provisions of this statute, the court may treat the line of demarcation as something other or different than one ascertainable under such regulations as the Secretary of the Treasury may prescribe. We think the case is one where rules of construction need scarcely be stated or resorted to. The statute is so plain and clear in its provisions that it may be said that there is no room for construction. The line of demarcation is between wines containing 14 per cent or less of absolute alcohol and those containing more than 14 per cent of absolute alcohol. Clearly any wine that contains alcohol in quantities perceptible and ascertainable above 14 per cent comes within the classification which fixes the higher rate of duty. * * *

The defendant also cites as controlling of the issue herein the holding in *Penn Surgical Mfg. Co.* v. *United States*, 64 Treas. Dec. 563, T.D. 46746, decided November 15, 1933. There, certain aseptic bone wax, assessed with duty under paragraph 24 of the Tariff Act of 1930 as a medicinal preparation containing alcohol, was claimed properly dutiable under paragraph 5 of the same act as a medicinal preparation, not specially provided for. An analysis of a sample of the product disclosed that the liquid portion, constituting 11.6 per centum of the total sample, was composed of a 1 per centum solution of salicylic acid in 2 per centum by volume alcohol and water.

In disposing of the plaintiff's claim, the Customs Court, one judge dissenting, at page 564, stated:

It thus appears that as imported the merchandise consisted of a solid portion and a liquid portion, and that among the constituents of the liquid portion was alcohol, 2 per centum by volume. Upon this showing it does not seem to be open to question that the merchandise as imported was a medicinal preparation containing alcohol. It is a notable fact that in framing paragraph 24, *supra*, insofar as it provides for medicinal preparations containing alcohol, Congress specified no minimum of alcoholic content, and it is not for this court to say that 2 per centum of alcohol may be treated as though it were a mere trace.

We are convinced that the collector's assessment was in conformity with the statutory requirements, and the protest is therefore overruled.

In our opinion, the *Vandegrift & Co.* and *Penn Surgical Mfg. Co.* cases, *supra*, are distinguishable from the case at bar and the holdings in the above-cited cases are not conclusive in the determination of the classification of the merchandise here in issue. In the *Vandegrift*

case, *supra*, there was no question but that the product under consideration "contained" alcohol, the only question for determination being whether it contained more than 14 per centum of absolute alcohol. The line of demarcation was between wines containing 14 per centum or less of absolute alcohol and those containing more than 14 per centum of absolute alcohol. The court there pointed out that the percentage of alcohol was to be determined pursuant to Government regulations to ascertain whether the perceptible amount of alcohol fell below or above the line of demarcation. In the case before us, the question is whether the small amount of alcohol present in the imported product is sufficient to bring the merchandise within a tariff provision for flavoring extract containing not over 20 per centum of alcohol. Here, unlike the situation in the *Vandegrift* case, *supra*, something more than a line of demarcation is involved, namely, whether the amount of alcohol present in the imported product is so insignificant that, for tariff purposes, it should not be considered at all in having a bearing upon the classification of the involved flavoring extract.

In the *Penn Surgical Mfg. Co.* case, *supra*, the amount there was as a medicinal preparation containing alcohol. The court therein held, in effect, that the 2 per centum by volume of alcohol contained in the liquid portion of the involved product could not be treated as though it were a mere trace, pointing out "that in framing paragraph 24, *supra, insofar as it provides for medical preparations containing alcohol*, Congress specified no minimum of alcoholic content." [Italics supplied.] Apparently, the court considered that, in the case of medicinal preparations, an insignificant amount of alcohol present in a product was sufficient to bring an article within a provision for medicinal preparations containing alcohol. For all that the record there showed, the alcohol present was intended as a constituent of the medicinal preparation. In the case at bar, however, the alcohol which is present in the imported product is merely left over from the initial process employed in the manufacture of the flavoring extract, where it is required to extract flavor from the ginger root, and, concededly, the alcoholic content here serves no useful purpose in the product, factors which, in our opinion, were not present in the *Penn Surgical Mfg. Co.* case, *supra*.

In accordance with the observations heretofore made, we deem it pertinent to refer to certain other decisions of our courts on the question whether a small amount of material in a product affects its classification and wherein the *de minimis* rule was also involved.

In *Cosmos Textile Corp.* v. *United States*, 21 C.C.P.A. (Customs) 124, T.D. 46449, certain cotton cloth, containing from 2 to 3 per centum of wool fibers, which fibers came from shredded rags in part of wool and which rags were inadvertently mixed with cotton rags, was held

dutiable as "cloth, in chief value of cotton, containing wool," under paragraph 906 of the Tariff Act of 1930, rather than as "cotton cloth" under paragraph 904 of the said act. Our appellate court therein, in rejecting the application of the legal maxim, *de minimis non curat lex*, to the imported merchandise, held that the small amount of wool contained in the cloth was not an impurity, as contended by the importer, and that the wool, being one of the desirable constituents in cloth used for making clothing, served, in the cloth, its usual wool function, even though, under the particular circumstances of that case, to an extent which was regarded as unimportant by the trade.

In *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 C.C.P.A. (Customs) 175, C.A.D. 304, certain mixed dog food, consisting of 82 per centum beef, 5.8 per centum cereal, and small percentages of carrots, spinach, and brewer's yeast, was held properly dutiable under paragraph 730 of the Tariff Act of 1930, as modified, as "Mixed feeds, consisting of an admixture of grains or grain products with oil cake * * * or other feedstuffs," as claimed, rather than under paragraph 1558 of the act as a nonenumerated manufactured article, as classified. The principal issue there involved was whether the 5.8 per centum of corn meal contained in the product was a substantial amount sufficient to bring the imported product within the mixed feeds provision of the act. Our appellate court, in the *Corporacion Argentina* case, *supra*, found from the evidence therein that the 5.8 per centum of cereal in the involved product served a definite and satisfactory food purpose and, accordingly, held it to be a quantity which was substantial and one which could not be ignored under the rule of *de minimis non curat lex*.

In *Varsity Watch Co.* v. *United States*, 34 C.C.P.A. (Customs) 155, C.A.D. 359, our appellate court, in affirming a decision of the court (*Same* v. *Same*, 17 Cust. Ct. 24, C.D. 1015), held certain watchcases of base metal, the bezels of which, before importation, were electroplated with a solution containing a small quantity of gold, properly classifiable under paragraph 367(f) (2) of the Tariff Act of 1930, as amended, as watchcases "in part of gold," as classified. In its decision, this court (C.D. 1015), at page 26, stated:

It is conceded that the watchcases have been coated with a solution containing gold by the process of electroplating, and it is not disputed that the amount of gold applied to each case is relatively very slight both in value and in quantity. Since the amount of gold present in the imported watchcases is not due to any adventitious circumstance, but was deliberately introduced for a practical purpose, we regard it of little or no consequence that the amount of gold used is relatively small in comparison with the amount of base metal in the cases. Consequently, as we view it, this is not an instance where recourse should be had to the rule *de minimis non curat lex*.

The *Cosmos Textile Corp.*, *Corporacion Argentina*, and *Varsity Watch Co.* cases, *supra*, are authority for the proposition that where

a certain material, however small, has been introduced in a product to serve a definite and useful purpose therein, such quantity is substantial and one which is not subject to the *de minimis* rule. In the case at bar, as heretofore pointed out, the alcohol is present in the imported product merely as a trace left over from the extraction process. Here, there is no deliberate admixture of alcohol with the ginger extract to obtain the imported ginger ale extract. We likewise deem it significant, in the determination of the classification of the merchandise at bar, that, as disclosed by the testimony of plaintiff's witness, Beatty, the 0.49 per centum of alcohol by weight in the importation does not serve any useful function. The Government chemist also testified, in this connection, that he did not know of any commercial purpose which would be served by the quantity of alcohol found to be present in the imported flavoring extract. These factors, in our opinion, bring the present case within the principles enumerated by the courts in the *McLaughlin & Freeman, R. W. Gresham, Cosmos Textile, Corporacion Argentina*, and *Varsity Watch Co.* cases, *supra*, although, as heretofore noted, the court, in the latter three cases, held the involved materials were not subject to the application of the *de minimis* rule, inasmuch as their introduction in the products there under consideration served a useful purpose, thus rendering their presence significant in the classification of the involved importations. We hold that the amount of alcohol present in the imported product is so insignificant that it should not be considered in determining the tariff classification of the importation in question.

For the reasons heretofore advanced, we are of opinion that the maxim *de minimis non curat lex* is applicable to the imported merchandise. Accordingly, we hold the involved merchandise properly dutiable under paragraph 39 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 7½ per centum ad valorem as a flavoring extract, not containing alcohol, not specially provided for, as claimed. The protest is sustained.

Judgment will be rendered accordingly.