(C.D. 2278)

THE NESTLE CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 17, 1961)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar which was invoiced as "(Gril Maggi) Meat and Veg. Extract" was classified under paragraph 24 of the Tariff Act of 1930 under the provision therein for "all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less," with a duty assessment of 20 cents per pound and 25 per centum ad valorem. Plaintiff claims that the merchandise is properly dutiable at the rate of 20 per centum ad valorem under paragraph 1558 of the act as a nonenumerated manufactured article.

As appears by the record, the product in question is a liquid consommé extract, consisting of meat extract, hydrolyzed vegetable proteins, salt, monosodium glutamate, and sherry wine, all added to a water solution of spices (R. 9).

There was received in evidence as plaintiff's exhibit 1 a sample bottle, the contents of which were described as the same as the merchandise here imported. The label on plaintiff's exhibit 1, placed

thereon after importation, was received in evidence as defendant's exhibit A (R. 7) and reads in part as follows:

NEW

NESTLÉ'S

E X T R A

A HYDROLIZED

PROTEIN INSTANT TONIC

\*

To promote good digestion—
instant energy

Plaintiff's exhibit 2 is a customs laboratory report, which discloses that, at the time the product in question was imported, the alcoholic content was four-tenths of 1 per centum by weight, equivalent to six-tenths of 1 per centum by volume (R. 26).

The only testimony in the case was that offered on behalf of the plaintiff by Dr. Konrad Durrenmatt, president of Westreco, Inc., Stamford, Conn., a wholly owned subsidiary of the Nestle group of companies. The record discloses that the witness holds the degree of doctor of philosophy in chemistry, University of Berne, Switzerland, 1938. Dr. Durrenmatt testified that he was familiar with the imported merchandise, the product having been developed under his super-vision (R. 5). He stated that he was familiar with the process of preparing and manufacturing the contents of plaintiff's exhibit 1, describing the production of the importation at bar as follows:

In very general terms, we prepare a water solution of spices. Afterwards we add meat extract, hydrolyzed vegetable proteins, salt, monosodium glutamate, sherry. We cook, we filter, and afterwards the product is filled in these bottles. [R. 8.]

It was stipulated by counsel for the respective parties that the imported merchandise, as represented by plaintiff's exhibit 1, is not a flavoring extract and is not a chemical compound, mixture, or salt (R. 10). Dr. Durrenmatt further testified that merchandise, such as plaintiff's exhibit 1, was developed as a simple preparation to make hot or cold consommé and that, in its use, a teaspoonful is placed in a cup of hot or cold water and then dissolved (R. 11). He stated that sherry, which contains 19 per centum of alcohol by volume, is added to merchandise, such as here imported, because "one of the important flavors of a consommé is sherry, so we had to add sherry" as a flavoring (R. 12). In this connection, the witness stated that no alcohol is introduced into the "Gril Maggi" as a separate ingredient other than that contained in the sherry (R. 15). Dr. Durrenmatt further stated that the alcohol present in the concentrated product imported did not contribute to its preservation, but that the salt contained therein was the element which acted as preservative (R. 22–23).

The question here presented for consideration is whether the imported article, which is admittedly a compound containing alcohol,

is properly classifiable as such, in view of the fact that the quantity of alcohol present in the importation is only 0.4 per centum by weight and 0.65 per centum by volume.

The application of the *de minimis* rule has been passed upon by this and our appellate court on a number of occasions. In *Varsity Watch Co.* v. *United States*, 34 C.C.P.A. (Customs) 155, C.A.D. 359, the merchandise consisted of wristwatch cases of very cheap base metal construction to which had been added to the "bezel" or top part, by a process of electrolytic deposition, a slight quantity of gold amounting to much less than 1½ thousandths of 1 inch in thickness, it appearing that the gold was intentionally plated thereon with the definite purpose of imparting a gold appearance. The plaintiff, in that case, invoked the rule of *de minimis non curat lex*, maintaining, in that connection, that, in view of the insignificant quantity of gold involved, the importation should be treated, for classification purposes, as if it contained no gold at all. In holding the merchandise properly classifiable under paragraph 367(f)(2) of the Tariff Act of 1930, as modified, as watchcases "in part of gold," as assessed and as found by the trial court, our appellate court, in the *Varsity Watch Co.*, case, *supra*, pages 162–163, stated:

From all the cases involving the application of the *de minimis* rule it appears to be the weight of authority that certain amounts of an ingredient, although substantial, may be ignored for classification purposes, depending upon many different circumstances, including the purpose which Congress sought to bring about by the language used and whether or not the amount used has really changed or affected the nature of the article and, of course, its salability.

In the instant case, it is admitted that the gold is contained in the plating of the article and was put there for the purpose of adding to its attractiveness in the way of color and no doubt it was added for the purpose of increasing its salability. Under such circumstances, the characteristics of the article were changed from those which it would possess if no gold whatever were used. We know of no case which supports the contention of appellant that under the *de minimis* rule the small quantity of gold here should be disregarded.

If it happened that gold got into the article by accident, if it did not enhance its value and had no purpose in commerce, if it were an unintentional adulterant or the result of an unforeseen and undesired chemical reaction, of course the situation, depending upon all the facts, might be different.

The principle enunciated in the *Varsity Watch* case, *supra*, is applicable to the situation in the case at bar, the record herein disclosing that the addition of the sherry wine was for the purpose of adding a particular flavor to the product, thus enhancing its salability.

Plaintiff maintains, in effect, that the fact that the alcohol in the imported product is introduced therein through the inclusion of the sherry wine rather than separately as alcohol precludes classification of the merchandise at bar as an "alcoholic compound." A similar situation was before our appellate court in the case of *C. H. Arnold & Co.* v. *United States*, 20 C.C.P.A. (Customs) 417, T.D. 46259. The

importation there involved consisted of sherry or other low-grade wines, each containing alcohol in less quantity than 20 per centum and also roughly 1.78 per centum of salt, the product in question being used as a flavoring in the preparation of sauces for various dishes. The record therein disclosed that, by reason of certain additives, the merchandise was unpalatable for beverage purposes. In its original brief, appellant, in the case here cited, suggested that if the merchandise in question was a compound of any character it was a compound of *wine* and salt and not a compound of *alcohol* and salt. In disposing of this contention, our appellate court, in the *Arnold & Co.* case, *supra*, at page 423, stated:

> We are of opinion that the term "alcoholic compound" found in paragraph 24, *supra*, means a compound or mixture of two or more ingredients, which compound contains alcohol and which alcohol is present when the compound is completed. * * *

In our opinion, the reasoning applied by the court in the *Arnold & Co.* case, *supra*, in determining the proper classification of the merchandise there involved, is equally applicable in deciding the issue here presented.

In *Canada Dry Ginger Ale, Inc.* v. *United States*, 43 Cust. Ct. 1, C.D. 2094, the court had under consideration the classification of certain ginger ale extract. The importation in question was assessed with duty under paragraph 24 of the Tariff Act of 1930 as a flavoring extract, containing not over 20 per centum of alcohol, and was claimed to be properly classifiable under paragraph 39 of the act as a flavoring extract, not containing alcohol and not specially provided for. It appeared that the quantity of alcohol present in the ginger ale extract was 0.49 per centum by weight. Plaintiff therein contended that the proportion of alcohol contained in the imported product was so insignificant that it should be ignored in determining the proper classification of the involved product, referring in this connection to the "rule" *de minimis non curat lex* (the law takes no account of trifles). In upholding the plaintiff's contention, the court, in the *Canada Dry Ginger Ale* case, *supra*, at page 9, stated:

> * * * In the case at bar, as heretofore pointed out, the alcohol is present in the imported product merely as a trace left over from the extraction process. Here, there is no deliberate admixture of alcohol with the ginger extract to obtain the imported ginger ale extract. We likewise deem it significant, in the determination of the classification of the merchandise at bar, that, as disclosed by the testimony of plaintiff's witness, Beatty, the 0.49 per centum of alcohol by weight in the importation does not serve any useful function. The Government chemist also testified, in this connection, that he did not know of any commercial purpose which would be served by the quantity of alcohol found to be present in the imported flavoring extract. These factors, in our opinion, bring the present case within the principles enumerated by the courts in the *McLaughlin & Freeman, R. W. Gresham, Cosmos Textile, Corporation Argentina*, and *Varsity Watch Co.* cases, *supra*, although, as heretofore noted, the

court, in the latter three cases, held the involved materials were not subject to the application of the *de minimis* rule, inasmuch as their introduction in the products there under consideration served a useful purpose, thus rendering their presence significant in the classification of the involved importations. We hold that the amount of alcohol present in the imported product is so insignificant that it should not be considered in determining the tariff classification of the importation in question.

In the present case, however, unlike the situation in the *Canada Dry* case, *supra*, the alcohol in the imported merchandise is present not merely as a trace material left over from a process employed in its production. On the contrary, as heretofore observed, the record discloses that the sherry wine was intentionally added to the other ingredients which make up the product in question, such addition being made for a specific purpose, namely, to add a particular flavor to the product and, in so doing, further the salability of the merchandise. Here, unlike the alcohol in the *Canada Dry* case, *supra*, the wine content of the imported merchandise served a useful and necessary purpose, rendering the product more fit for commercial consumption. The alcohol in the product at bar is present as the result of a deliberate admixture of wine, an alcoholic product, with meat extract and other ingredients. In our opinion, it is immaterial in the determination of the issue herein whether or not alcohol can be removed from sherry wine. The fact is that alcohol is present in the product, contained in the sherry wine, which is deliberately added for a useful purpose to flavor the manufactured article.

In view of the factors present in the case at bar, as heretofore outlined, we hold that the amount of alcohol present in the imported product is not so insignificant that it should not be considered in determining the tariff classification of the merchandise in question.

Accordingly, we are of opinion that the maxim *de minimis non curat lex* is not applicable to the imported merchandise. We hold the involved merchandise properly dutiable, therefore, under paragraph 24 of the Tariff Act of 1930 at the rate of 20 cents per pound and 25 per centum ad valorem under the provision therein for "all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less," as classified. The protest is overruled.

Judgment will be rendered accordingly.