(C.D. 4142)

NORTHAM WARREN CORP. ALLTRANSPORT, INC., ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 8, 1970)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *David O. Elliott* of counsel) for the plaintiffs.

*Carl Eardley*, Acting Assistant Attorney General (*Brian Goldstein* and *Robert Blanc*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: These protests, consolidated for the purpose of trial, place in issue the classification of merchandise described as "pearl essence". The importation was classified pursuant to the provisions of paragraph 27(a)(4)(5) of the Tariff Act of 1930, as modified by T.D. 52739, which provides for mixtures in part of a product provided

for in paragraph 27 of said act, said product being, in this case phthalic acid, provided for in paragraph 27(a)(1).

Plaintiffs claim that the instant merchandise is properly classifiable pursuant to paragraph 66 of the Tariff Act of 1930, as modified by T.D. 54108, as "pearl essence".

The testimony herein establishes that the importation is pearl essence used in the manufacture of nail polish. Pearl essence is a pigment extracted from fish and fish scales. The importation contains 0.15 percent of a coal tar derivative known as "Tinopal". The tariff consequences of the presence of this coal tar derivative is the essential issue of this case.

Plaintiffs contend that the coal tar derivative present in the importation should not affect its classification and request that this court apply the maxim of statutory construction *de minimis non curat lex*. In a tariff context said maxim would indicate that the tariff law does not base classification on very small or trifling matters.

This doctrine has been considered quite frequently by this court and a clear rule of law has developed which can be stated as follows: "An ingredient or component of an imported article will not affect the tariff classification of that article if said ingredient does not perform a useful function or a commercial purpose." *Canada Dry Ginger Ale, Inc. v. United Sttaes*, 43 Cust. Ct. 1, C.D. 2094 (1959). The element of intent in utilizing said ingredient also plays a role in the application of said rule. *Varsity Watch Co. v. United States*, 34 CCPA 155, C.A.D. 359 (1947) ; *The Nestle Co., Inc. v. United States*, 47 Cust. Ct. 44, C.D. 2278 (1961).

The record herein establishes that the amount of Tinopal present in the importation was sufficient to perform a function as an optical brightener. The record does not permit any conclusion other than that its introduction in the importation was deliberate.

In view of the usefulness of this ingredient and the conclusion we reach that it was deliberately introduced for a specific purpose, it cannot be disregarded in the tariff classification of the importation. This would remain the case even if the importer had specifically requested the exclusion of said ingredient since we are dealing with the importation in its condition as imported, in which the coal tar derivative ingredient plays a functional role, and not in some ideal form.

Plaintiffs have cited the case of *E. Fougera & Co. v. United States*, 49 Treas. Dec. 986, T.D. 41632 (1926), in support of the proposition that the language "in part of" is not intended to encompass an insubstantial ingredient. We accept that case as authority for excluding from consideration minute quantities of coal tar derivative ingredients which do not participate in the primary functional role of the mixture. In *E. Fougera & Co. v. United States, supra*, certain medicinal prepa-

rations containing 0.07 percent or 0.44 percent of salicylic acid (a coal tar derivative, non-medicinal preservative named in paragraph 27) were held to be properly classifiable pursuant to paragraph 5 of the Tariff Act of 1922 as "medicinal preparations" and not pursuant to paragraph 28 of said act providing for products "obtained, derived, or manufactured in whole or in part from any of the products provided for in paragraph 27 or 1549". We consider it essential to the outcome of the *Fougera* decision that the salicylic acid did not perform a medicinal function. We distinguished the instant case in which the coal tar derivative ingredient performed a function affecting the appearance of a product whose appearance is part of its functional role and in which said ingredient is present in a quantity sufficient to do its work.

We are aware that there are cases where the literal interpretation of provisions governing articles "in part of" certain ingredients or components leads to the "dog" being classified by the "tail". However, it is hoped that the functional criteria for the minute ingredient, set forth above, will serve to effectuate the legislative intent and avoid unfairness. Though it involves different language, see for example the recent decision of our appellate tribunal in *Rettinger Raincoat Mfg. Co.* v. *United States*, 57 CCPA 119, C.A.D. 989 (1970), in which the presence of 4 percent carbon, solely as a coloring agent in certain rainwear, was held not to justify classification of the rainwear as articles composed in part of carbon or graphite.

In light of the above, we conclude that the importatation consists of a mixture composed in part of a product provided for in paragraph 27 and is, accordingly, classifiable pursuant to paragraph 27(a)(4)(5). The coal tar derivative herein, though fractional, is not insubstantial and insignificant.

Judgment will issue accordingly.