(C.D. 4254)

GENERAL MILLS, INC.
KEER MAURER CO., INC., ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 17, 1971)

*Judge A. Dickson* and *Clifford L. Whitehill* (*Thomas V. Firth* and *Clifford L. Whitehill* of counsel) for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*Glenn E. Harris* and *James Caffentzis*, trial attorneys), for the defendant.

Before Watson, Maletz, and Re, Judges

WATSON, Judge: The three protests consolidated for the purpose of trial, place in issue the classification of two products known as

Nutralocust NG24 (hereinafter referred to as NG24) and Guartec CAP (hereinafter referred to as CAP). The former is a locust bean gum to which borax has been added while the latter is a guar gum to which small quantities of glyoxal and sulfuric acid have been added.

The importations covered by protest 68/55471 and 68/55472 were classified pursuant to item 493.50 of the Tariff Schedules of the United States as "products chiefly used as assistants in preparing or finishing textiles, not specially provided for", dutiable at the rate of 12.5% ad valorem. The merchandise covered by protest 69/36954 was classified pursuant to item 799.00 of the Tariff Schedules of United States as other "article[s], not provided for elsewhere in these schedules", dutiable at the rate of 9% ad valorem.[1]

The record establishes and defendant concedes that the classification of the first two protests pursuant to item 493.50 was erroneous and an alternative claim for classification of the merchandise covered by protest 69/36954 thereunder is untenable. Defendant, therefore, relies on an alternative claim for the classification of the merchandise covered by the first two of the above-mentioned protests pursuant to item 799.00, *supra*, and the presumptively correct classification of the merchandise covered by protest 69/36954.

Plaintiffs claim that the importations are properly classifiable pursuant to item 188.38 of the said tariff schedules as other natural gums, not specially provided for, and are free of duty.

The testimony of two witnesses for the plaintiffs establishes certain facts regarding the importation. The raw material for each product is the endosperm or inner portion of the seed of the locust bean tree and the guar plant, respectively. In either case the seeds are removed from their outer covering, split and husked to expose the endosperm. The endosperms are tempered to increase the moisture content and then ground to a fine, white powder. In the case of NG24, borax is added to the extent of approximately 4 percent of the total. In the case of CAP, glyoxal is added to the extent of approximately one-half of one percent of the total and sulfuric acid is added to the extent of approximately three-tenths of one percent of the total. The addition of these substances does not change the chemical compositions of the gums as they are found in their natural state. They do, however, affect the attributes of the importations in their use in the papermaking industry. NG24 and CAP are used to promote the deflocculation of paper fibers and to permit the bonding of paper fibers. To accomplish this end they are placed in the solution used to wash the paper fibers.

---

[1] We note that liquidation of this entry took place less than 60 days after appraisement. In the absence of a duly filed appeal for reappraisement the liquidation is valid and the protest grounded thereon is effective. *John V. Carr & Son, Inc.* v. *United States*, 66 Cust. Ct. 316, C.D. 4209 (1971).

The presence of borax, glyoxal and sulfuric acid aids the dispersion of the importation in the water.

Plaintiffs claim that the addition of borax, glyoxal and sulfuric acid is nothing more than an additional refinement of the natural gum products and does not remove them from the scope of the provision for natural gum. Plaintiffs cite *P. Biersdorf & Co., Inc.* v. *United States*, 69 Treas. Dec. 986, T.D. 48353 (1936), and *J. E. Bernard & Company, Inc.* v. *United States*, 30 Cust. Ct. 122, C.D. 1509 (1953), in support of this proposition as well as *United States* v. *Sheldon & Co.*, 2 Ct. Cust. Appls. 485, T.D. 32245 (1912).

Study of these decisions as well as others, which will be referred to *infra*, leads us to conclude that the additional ingredients added herein are such as to remove the importations from possible classification as natural gums and represent a change of the substance in dispute greater than those changes involved in the cited cases. The cited cases deal with processes which, though complicated, were designed solely to separate the natural material from its source while the process herein of adding borax or glyoxal and sulfuric acid is one designed to provide the natural gum with improved properties over those which it possesses in its natural state.

In *United States* v. *Sheldon & Co.*, *supra*, for example, the Court of Customs Appeals held that certain gum resin subjected to a number of processes for the purpose of isolating it from its source material, was not processed beyond a crude state. In *P. Biersdorf & Co., Inc.* v. *United States*, *supra*, resin extracted from gutta-percha by the use of kerosene was held to be a natural product after being subjected to a process of separation from its natural surroundings. See also, *J. E. Bernard & Company, Inc.* v. *United States*, *supra*.

In none of these cases, however, were the substances subjected to a process which enhanced their characteristics for certain applications and modified their effectiveness in those applications by the use of additional ingredients. The processes involved in the instant case conform to those in the cited cases only insofar as they relate to the separation of gums from their natural state up to the point of the addition of the borax, the glyoxal and sulfuric acid. That step constitutes considerably more than a refinement of the product.

The word "refine" is defined in Webster's Third New International Dictionary (1963) as "reduce to a fine, unmixed, or pure state: separate from extraneous matter: free from dross or alloy ([refined] silver): free or cleanse from impurities ([refined] sugar)." The addition of the above-mentioned chemicals goes beyond the step of refinement and constitutes a modification or adjustment of the characteristics of the substance involved.

In sum, the addition of the aforementioned chemicals is not a step directed toward isolating the natural product and getting it by itself

and hence the instant factual situation does not come within the ambit of those cases holding that the various processes used to isolate a natural substance do not change the character of that natural substance for tariff purposes.

We now turn to the question of whether, despite the presence of the aforementioned chemicals, for purposes unrelated to the isolation of the natural substance, the importations should nevertheless be classifiable pursuant to the provision for natural gums. In this connection plaintiffs make a number of contentions: that the language "whether crude or subjected to refining processes" was intended to permit processing beyond mere isolation and preparation for shipment; that because no chemical change has been induced in the importations, they are properly classifiable pursuant to the provision for natural gums; that since the same end achieved by the aforementioned chemicals could be effected by a further mechanical refining, the addition of minute portions of such chemicals should not affect the classification of the merchandise.

It is our view that the language of the gum provision does not lend itself to the expansion contended for by plaintiffs. There is no indication that the allowance for refining processes is anything more than a continuation of prior legal holdings in this area, namely, that a natural product may be subject to processes which isolate and separate it from undesired material present in the natural state. Nor, do we feel that only a chemical change would constitute a process removing the natural product from the natural gum provision. Any process, be it chemical or mechanical or physical, which does not relate to the isolation of the natural substance, will withdraw it from the scope of the relevant provision. It is of no moment that the desired characteristics could be achieved by a simple continuation of the mechanical refining process. The fact remains that these characteristics have been attained by the addition of new substances and the resulting products are something more than simple, natural gums. Similarly the relative quantity of the substances added is not negligible so long as they perform a definite role in affecting and modifying the function and use of the importation. See, *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 CCPA 175, C.A.D. 304 (1945). On this point we distinguish *United States* v. *Nippon Co. et al.*, 32 CCPA 164, C.A.D. 303 (1945), in which certain imported kelp, to which monosodium glutamate was added as flavoring, remained classifiable as kelp. In that case the addition of the flavoring did not affect the uses of the importation and was an enhancement of its desirability rather than a modification of its function. See also, *Border Brokerage Company, Inc.* v. *United States*, 64 Cust. Ct. 331, C.D. 3999 (1970), in which natural clam juice to which water and salt had been added, was found to be

something more than clam juice. See also, *Northam Warren Corp., Alltransport, Inc., et al.* v. *United States*, 65 Cust. Ct. 584, C.D. 4142 (1970) (appeal pending).

For the reasons set forth above we find that the addition of borax, glyoxal and sulfuric acid to the importations made them articles which were more than mere natural gums and hence removed them from the scope of the provision for natural gums. Accordingly, the classification of the merchandise covered by protest 69/36954, as other articles, not specially provided for under item 799.00, is upheld while the proper classification of the merchandise covered by the two remaining protests is in accordance with defendant's alternate claim, pursuant to the same item 799.00.

Judgment will issue accordingly.