(C. D. 2021)

BRITTON & COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 14, 1958)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: These are protests, consolidated at the trial, against the collector's assessment of duty on merchandise described on the invoices as wood charcoal briquettes at 15 per centum ad valorem under paragraph 216 of the Tariff Act of 1930, as modified, as articles wholly or in part of carbon. It is claimed that the merchandise is entitled to free entry under paragraph 1802 as wood charcoal. The collector originally classified this merchandise under paragraph 1802 but reliquidated thereafter, assessing duty under paragraph 216.

The pertinent provisions of the tariff act are as follows:

Paragraph 216 (as modified by the General Agreement on Tariffs and Trade, T. D. 51802):

Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for_____ 15% ad val.

PAR. 1802. Wood charcoal.

Manuel E. Heymes, owner of M. E. Heymes & Co., testified that he had been importing charcoal from Mexico and selling it in California since 1923. He described the method of production as follows: After wood is cured or dried, it is stacked, covered with sand or mud, and fired to char it. A sample of the resultant product was received in evidence as plaintiff's illustrative exhibit 1. It consists of an irregular-shaped piece of charred wood, about 6½ inches long, 4 inches high, and 3½ inches wide.

Mr. Heymes stated that he has been dealing with merchandise such as that covered by the protests since 1953. A sample was received in evidence as plaintiff's illustrative exhibit 2. It consists of a tubular-shaped piece of pressed black powdery material, of even texture, about 2½ inches long, 1¾ inches wide, and 1¼ inches high. According to a stipulation of counsel, it is made of ground charcoal, containing approximately 9 percent starch as a binder, pressed into briquette form. The witness testified that such merchandise is made in his factory in Mexicali as follows: Charcoal in lump form is crushed and broken into powder, put in a mixer, starch and water added, and the mixture forced through a pelletiser. It comes out in a long tubular piece which is cut into the size desired.

Mr. Heymes said that charcoal, such as plaintiff's illustrative exhibit 1, is used mostly as a source of heat for cooking by professional cooks and that briquettes are employed for the same purpose by home users. According to the witness, charcoal produces a greater and more sustained heat and less ash than briquettes and has no odor, whereas briquettes give off an odor from the starch. However, they are a more convenient and uniform size for use in producing heat for charcoal cooking. They do not have any use other than that which plaintiff's illustrative exhibit 1 has.

The witness stated that charcoal, such as plaintiff's illustrative exhibit 1, is not used for many purposes. He had never heard of its being used for anything other than to produce heat for cooking and did not think it could be employed for other purposes. He supposed it might be used to make charcoal crayons, but he had never been able to sell such charcoal, or briquettes either, for anything other than as a source of heat for cooking food.

Joseph H. Nash, a salesman for Mexchar, Inc., a firm owned by Mr. Heymes, testified that he was familiar with merchandise like plaintiff's illustrative exhibits 1 and 2 and had sold such items in

California for about 2 years. He has seen them being made, briquettes in Mexico and charcoal in California, the latter by a different method than that described by Mr. Heymes. He said that the charcoal made in Mexico was better, because it was made from harder woods.

The question before the court is whether the imported merchandise is classifiable as wood charcoal. It is well settled that an *eo nomine* statutory designation of an article, without limitation or a shown contrary legislative intent, judicial decision, or administrative practice, and without proof of commercial designation, includes all forms of the article, *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464. Whether an article which, at one stage of its production is appropriately classified under a particular designation, has been so altered by subsequent operations that that designation is no longer proper, is a question of fact, depending upon the circumstances of the case. *John J. Coates Co. et al.* v. *United States*, 44 C. C. P. A. (Customs) 97, C. A. D. 643.

In the instant case, the original charcoal has been ground, mixed with starch and water, and formed into pellets. It has been held that ground powdered wood charcoal is classifiable as wood charcoal; that the process of grinding does not take it out of that classification. *K. Asai* v. *United States*, 65 Treas. Dec. 1330, Abstract 27172. It has also been held that charcoal in sticks, of such fine grade that it could not be compared to ordinary charcoal, used only by jewelers to furnish indirect heat for soldering purposes, is classifiable as wood charcoal. *Wagner Bros. & Co.* v. *United States*, 60 Treas. Dec. 1036, T. D. 45323.

While it has been held that charcoal in powdered or briquette form, held together by a binding agent, does not fall within the charcoal paragraph, there are factors which readily distinguish these cases. In *Marrash Bros.* v. *United States*, 29 Treas. Dec. 564, T. D. 35917, the merchandise was described as charcoal for censers and the applicable tariff provision (paragraph 447 of the Tariff Act of 1913) covered charcoal suitable for use as a pigment. It was held that testimony, describing the merchandise as powdered charcoal held together by chemical compounds, which acted as an adhesive and caused more rapid ignition of the charcoal, removed the commodity from the charcoal paragraph, if it had not been already removed by failure of proof that it was not suitable for use as a pigment. In *Marshall Field & Co.* v. *United States*, 50 Treas. Dec. 688, Abstract 758, the merchandise was described as perfumed charcoal, and the protest was overruled on the authority of the *Marrash* case.

In *John C. Minor* v. *United States*, 56 Treas. Dec. 884, Abstract 10081, where the merchandise had been chemically treated in the sense that lime had been used as a binder, the court held that the evidence presented was insufficient to overcome the presumption of correctness attaching to the collector's classification.

In *C. R. Ruegger, Inc.* v. *United States*, 54 Treas. Dec. 602, Abstract 6854, the court said, by way of dicta, "even though it was admitted that charcoal, a vegetable substance, is coal of a character comprehended within paragraph 1548, its character is changed with the addition of sulphate of lime and sand."

In a case involving a coal product, *Sobrinos de Ezquiaga* v. *United States*, 9 Treas. Dec. 1152, T. D. 26542, it was held that briquettes made of coal dust, mixed with coal tar or coal-tar pitch and pressed into molds, were entitled to a rebate of duties under a statute (32 Stat. 773) covering "all coal of every form and description." General Appraiser Somerville stated, in the decision, that the addition of a small percentage of pitch or coal tar did not make any substantial change in the merchandise, the purpose being merely to hold the coal dust together, and that the use of the briquettes was identical with that of bituminous coal—to be burned in grates.

In the instant case, the only purpose of the starch was to act as a binder to hold the ground charcoal together. Except for that, its use was detrimental, since it produced an odor. According to the testimony herein, the briquettes are used for the same purpose as the charcoal in its original form—to furnish heat for cooking. Although this particular type of charcoal, in its original form and in briquette form, has only one use, it may still be classified as charcoal. *Wagner Bros. & Co.* v. *United States*, *supra*.

In our view, the evidence in this case is sufficient to establish that the imported merchandise is a form of wood charcoal. The grinding of the charcoal and forming it into briquettes with the use of starch as a binder did not effect so significant a change in its physical characteristics or use as to indicate that it had become something more than wood charcoal. Cf. *John J. Coates Co. et al.* v. *United States*, *supra*.

We hold, therefore, that the merchandise is free of duty as wood charcoal under paragraph 1802 of the Tariff Act of 1930. The protests are sustained and judgment will be rendered for the plaintiff.