BEFORE THE THIRD DIVISION, APRIL 26, 1961

No. 65533.—H. E. Ladwig *v.* United States, protest 60/26903 (Great Falls).

JOHNSON, Judge: The merchandise involved in this case was described on the entries as "Coal and coke briquets and other composition coals for fuels." It was assessed with duty by the collector at 15 per centum ad valorem under paragraph 216 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as articles composed wholly or in part of carbon. It is claimed that the merchandise is free of duty under paragraph 1650, as amended, *infra.*

The pertinent provisions of the tariff act are as follows:

[PAR. 216, as modified by the General Agreement on Tariffs and Trade, T.D. 51802.] Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for_____15% ad val.

PAR. 1650. Coal, anthracite, semianthracite bituminous, semibituminous, culm, slack, and shale; coke; compositions used for fuel in which coal or coal dust is the component material of chief value, whether in briquets or other form. [Free.]

At the trial, James S. Shaw, the importer, appeared on his own behalf and testified as follows: H. W. Ladwig, the importer of record and plaintiff, is Mr. Shaw's customs broker and filed the protest on his behalf. The merchandise herein was made from about 25 percent natural semianthracite coal and 75 percent coking coal, which, after being taken out of a mine in Canada, were screened to size and mixed. The mixture was run through a briquetting machine, and the resulting briquets were placed in a cylinder-shaped oven into which heat was injected. The heat drove off the volatile matter and the moisture, leaving "only the ash, and carbon, which is the chemical makeup of coal originally, which is the approximate analysis of coke." The briquets were broken up before shipment because of the size needed at the customer's plant. According to the witness, the analysis of this merchandise is approximately the same as that of other coke. He stated that all coke is coking coal, which, when subjected to heat, expands and produces a hard block-shaped material used as a reducing agent by chemical, carbide, and fuel companies.

There was received in evidence a letter from Murrel F. Decker, deputy collector in charge at Eastport, Idaho, in which he quotes from a report of the chief chemist at the customs laboratory in San Francisco, as follows:

The sample is in the shape of hard irregular shaped lumps. In our opinion, based on our laboratory analysis and the importer's statement, the sample is coke.

The witness stated that this merchandise was not produced in a regular coke oven, but the results were the same. He said that in regular coke ovens, of which there are several kinds, the coking coal is subjected to heat from 24 to 72 hours, causing the coal to expand and driving off the volatile matter and moisture, thereby making coke.

Defendant claims that plaintiff cannot recover, unless he brings himself within the principles of *Britton & Company* v. *United States*, 41 Cust. Ct. 64, C.D. 2021. In that case, we held that briquettes, made from ground wood charcoal, with 9 percent starch as a binder, used to produce heat for charcoal cooking, were free of duty under paragraph 1802 of the Tariff Act of 1930, as wood charcoal. We stated (p. 67):

* * * The grinding of the charcoal and forming it into briquettes with the use of starch as a binder did not effect so significant a change in its physical characteristics or use as to indicate that it had become something more than wood charcoal.

In the course of the opinion, we cited *Sobrinos de Ezquiaga* v. *United States*, 9 Treas. Dec. 1152, T.D. 26542, where it was held that briquettes made of coal dust, mixed with coal tar or coal-tar pitch and pressed into molds, were entitled to a rebate of duties under a statute (32 Stat. 773), covering "all coal of every form and description," on the ground that the addition of a small percentage of pitch or coal tar did not make any substantial change in the merchandise.

In *C. J. Tower & Sons* v. *United States*, 3 Cust. Ct. 67, C.D. 204, it was held that petroleum coke which had been calcined in an electric furnace to eliminate moisture and volatile matter was classifiable as coke under paragraph 1650 rather than as articles wholly or in part of carbon or graphite under paragraph 216. The court stated that the merchandise which was placed in the furnace was coke and that the merchandise which came out was still coke, although it had been advanced by having been calcined and the moisture and volatile matter removed.

In the instant case, it appears that the merchandise which went into the oven was a mixture of semianthracite coal and coking coal; that no other material was added to the mixture; and that the only thing done to it was to drive off moisture and volatile matter. The resulting merchandise is a type of coke and is, therefore, entitled to free entry under paragraph 1650, *supra*.

The protest is sustained and judgment will be rendered for the plaintiff.