(C.D. 2564)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 26, 1965)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The imported merchandise from Vancouver, B.C., Canada, chocolate "Mellos," was classified by the collector under paragraph 506, Tariff Act of 1930 (19 U.S.C.A., section 1001), as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as confectionery, valued at 6 cents or more per pound, and was assessed with duty at the rate of 14 per centum ad valorem. An internal revenue tax assessed on the coconut oil content at the rate of 2 cents per pound under the Internal Revenue Code of 1954, section 4581, is not in issue. Paragraph 506 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, under which the merchandise was classified, reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 506 | Sugar candy and all confectionery not specially provided for: | |
| * | *     *     *     *     * | * |
| | Valued at 6 cents or more per pound_____ | 14% ad val. |

The plaintiff contends that these chocolate "Mellos" are more specifically provided for as chocolate in any other form, whether or not prepared, and should be classified under the provisions of 19 U.S.C.A., section 1001, paragraph 777(b) (paragraph 777(b), Tariff

Act of 1930), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, which reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 777 | Cocoa and chocolate: | |
| * | *     *     *     *     * | * |
| (b) | Sweetened: | |
| * | *     *     *     *     * | * |
| | In any other form, whether or not prepared, valued 10 cents or more per pound. | 10% ad val. |

The sole issue is whether the chocolate "Mellos" fall within the customs classification of sweetened chocolate, as the plaintiff contends, or are dutiable under the statutory provision for confectionery, not specially provided for, as determined by the collector.

The plaintiff introduced the testimony of one witness and placed in evidence four exhibits. No evidence was offered on behalf of the defendant.

Mr. Russel B. Grant, president and general manager of Grant's Candies, Ltd., of Vancouver, B.C., Canada, was called as the witness for the plaintiff. He stated that he has been engaged in the manufacturing of candy and chocolates with Grant's Candies for 25 years.

The witness testified that he is familiar with the merchandise in question ("chocolate mellos") and that his company has been exporting this item to the United States in various assorted flavors: orange, rum, ginger, almond, and mint. He was shown a sample of the imported merchandise and identified it as being representative of the manufactured product. The chocolate Mello was offered and marked into evidence as plaintiff's exhibit 1. The witness stated that he had been manufacturing this product for 17 years and that in so doing had purchased milk chocolate in 10-pound blocks from the Washington Chocolate Co. in Seattle, and imported it into Canada. A 10-pound block of chocolate was received in evidence as plaintiff's exhibit 2, to illustrate one ingredient of the merchandise.

Mr. Grant described the process of manufacture as follows: The milk chocolate in 10-pound blocks is melted down in double-jacketed tanks at 120 degrees, and, to each 50 pounds of milk chocolate, 15 pounds of coconut oil is added at a melting point of 92 degrees. The two products are blended together and two teaspoonfuls of lecithin, which is an emulsifier, and 2 ounces of vanilla flavoring are added. After further mixing, the product is cooled to 78 degrees, Fahrenheit, then raised to 80 degrees and poured onto tables measuring 3 feet by

6 feet to a thickness of approximately one-half inch. When the product is in the process of settling, it is scored by knives and allowed to settle for 1 hour, after which time it is broken up into individual pieces. The pieces are sent through a chocolate inrober, which covers them with a ⅛-inch coating of milk chocolate, and then travel through refrigeration, after which they are wrapped by an automatic twist-wrapping device.

The witness stated that the purpose of the term "Mello" is to describe the flavor and texture and that the purpose of the coconut oil is to lower the melting point and thereby improve the eating quality of the "Mello" by enabling it to dissolve quicker in the mouth. He also stated that the milk chocolate used to coat the center is also imported from the United States and that nothing is done to it other than to melt it. The approximate size of the item in its finished piece measures about an inch and an eighth long by about five-eighths of an inch wide, and five-eighths of an inch thick through the center. The coating keeps any of the fats, oil, butter, and coconut oil from working their way through to the outside and thus creates a soft type of center, and a firmer outside shell with a higher gloss. He identified plaintiff's exhibit number 4 as being illustrative of the center portion of the chocolate "Mello." The witness stated that it contains milk chocolate, with the addition of the coconut oil, lecithin, and vanilla.

On cross-examination, the witness admitted that in plaintiff's exhibit number 3, consisting of the formula for manufacture of the chocolate mellos, the second item listed on that exhibit as "Double Oco" is the trade name for coconut oil and that, in order to make the center, you add 50 pounds of milk chocolate to 15 pounds of coconut oil. The witness further stated that the use of coconut oil was not for flavoring.

The plaintiff argues that, here, sweet chocolate blended with coconut oil, merely to lower the melting point of the chocolate, retains its essential function and purpose as prepared chocolate and that, therefore, the addition of the oil would be analogous to the addition to unsweetened chocolate of sugar, milk, or cocoa butter "all of which ingredients * * * do not alter the fundamental composition of the chocolate." The defendant argues that the imported merchandise containing more than a negligible amount of coconut oil, which has not been added as a flavoring agent, is something more than "prepared" sweetened chocolate, and, therefore, properly classified as confectionery, not specially provided for.

Plaintiff cites *Britton & Company* v. *United States*, 41 Cust. Ct. 64, C.D. 2021, in support of its position. In that case, it was held that: the *eo nomine* statutory designation of an article, without limitation or a shown contrary legislative intent, judicial decision, or

administrative practice, and without proof of commercial designation, includes all forms of the article. It was found that: the grinding of wood charcoal and the forming of it into briquettes, with the use of 9 percent starch as a binding agent, did not effect so significant a change in its physical characteristic or use to indicate that it had become something more than wood charcoal.

In this case, the additive was 15.2 per centum and changed the characteristics of the milk chocolate by imparting a softer, more mellow texture, so that it would melt in one's mouth.

We do not agree with plaintiff that chocolate molded in the form of flowers, having 5 per centum colored cocoa butter on a hundred pounds, imposed on the center of a piece of chocolate and held to be dutiable as confectionery in *A. Spaeth & Co., Inc.* v. *United States*, 8 Cust. Ct. 312, C.D. 627, presents any materially different factual situation from the instant case, where the coconut oil permeated the center of the chocolate, warranting the application of a different legal principle to this case.

In the case of *H. L. Day Company* v. *United States*, 15 Treas. Dec. 26, Abstract 17884, T.D. 28687 (affirmed in Suit 5179, T.D. 30343), the Board of General Appraisers, in considering the distinction between chocolate and confectionery stated that, although chocolate mixed with sugar, milk, and flavoring is dutiable as chocolate and not confectionery, "clearly an article of confectionery has been produced when sweet chocolate is mixed with other substances, such as nuts, fruits, or cream, thus increasing its desirability as a confection and unfitting it for use as a beverage or for any of the other well-known purposes for which chocolate is used."

The case of *C. J. Van Houten & Zoon, Inc.*, and *Bluefries New York, Inc.* v. *United States*, 44 Cust. Ct. 223, C.D. 2178, affirmed in 48 CCPA 116, C.A.D. 775, is the most recent expression by the court on the effect of adding ingredients to sweetened chocolate and governs the issue in this case. In the *Van Houten case*, small bars composed of sweetened chocolate, full milk powder, skimmed milk powder, lecithin, or vanillin, and 12 per centum chopped hazelnuts, were held classifiable as confectionery. In that case, the plaintiff contended that the nuts were used merely as a flavoring ingredient. The court held that the addition of 12 per centum of hazelnuts was not a flavoring and not the addition of a negligible amount of an ingredient. No claim is made in this case that the addition of the coconut oil as an ingredient is for the purpose of flavoring. The plaintiff claims the coconut oil is added to lower the melting point, cause the merchandise to dissolve quicker in one's mouth, and improve its eating quality. The addition of 15.2 per centum of coconut oil, which is certainly more than a negligible amount, makes the imported merchandise something

more than just sweetened milk chocolate and is properly considered a confectionery for tariff purposes. It should be classified under paragraph 506 of the Tariff Act of 1930, as modified, and the collector's classification must stand. The protest is overruled.

Judgment will be rendered accordingly.