(C.D. 3836)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 2, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges; LANDIS, J., concurring

RICHARDSON, Judge: The merchandise of this protest consists of chocolate mellos imported from Canada in June 1965. The collector classified the importation as confectionery under item 157.10 and assessed it with duty at the rate of 14 per centum ad valorem. The plaintiff claims it is properly classifiable as chocolate under item 156.30 at the rate of 10 per centum ad valorem.

The statutes involved are:

Tariff Schedules of the United States:

> Schedule 1.—Animal and Vegetable Products
>
>   \*    \*    \*    \*    \*    \*    \*
>
> Part 10.-Sugar; Cocoa; Confectionery
>
>   \*    \*    \*    \*    \*    \*    \*
>
> Subpart B headnote:
>
>  1. The term "*chocolate*", as used in this subpart, shall be limited to products (whether or not confectionery) consisting wholly of ground cocoa beans, with or without added fat, sweetening, milk, flavoring or emulsifying agents.
>
>   \*    \*    \*    \*    \*    \*    \*
>
> Chocolate:
>
>   \*    \*    \*    \*    \*    \*    \*
>
>   Sweetened:
>
>   \*    \*    \*    \*    \*    \*    \*

| | | |
|---|---|---|
| 156.30 | In any other form_____ | 10% ad val. |

\*      \*      \*      \*      \*      \*      \*

### Subpart C.-Confectionery

Subpart C headnotes:

\*      \*      \*      \*      \*      \*      \*

2. The term *"confectionery"*, as used in this subpart covers confections or sweetmeats ready for consumption. This subpart does not cover all confectionery (see subpart B of this part, part 9 of schedule 1, and subpart B of part 15 of schedule 1 for other provisions covering confectionery).

| | | |
|---|---|---|
| 157.10 | Candy, and other confectionery, not specially provided for_____ | 14% ad val. |

At the trial plaintiff moved to incorporate the record as to the facts of the process of manufacture of chocolate mellos and the exhibits in protest 63/16022 (*Border Brokerage Company, Inc.* v. *United States*, 55 Cust. Ct. 143, C.D. 2564 (1965)). Plaintiff introduced the testimony of two witnesses and three exhibits in addition to the four exhibits incorporated into the record from C.D. 2564.

In *Border Brokerage Company, Inc.* v. *United States*, 55 Cust. Ct. 143, C.D. 2564, the prior case involving chocolate mellos, this court found the merchandise to be confectionery under the provisions of the Tariff Act of 1930. The statutory provisions under which that case was decided were:

Paragraph 777 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

| 777 | | Cocoa and chocolate: | |
|---|---|---|---|
| | (a) | Unsweetened _____ | ¾¢ per lb. on net wt. |
| | (b) | Sweetened: | |
| | | In bars or blocks weighing 10 pounds or more each_____ | 1¢ per lb. |
| | | In any other form, whether or not prepared, valued 10 cents or more per pound_____ | 10% ad val. |

Paragraph 506 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

| 506 | Sugar candy and all confectionery not specially provided for: | |
|---|---|---|
| | Valued at less than 6 cents per pound___ | 20% ad val. |
| | Valued at 6 cents or more per pound____ | 14% ad val. |

Plaintiff's first witness Russell B. Grant, president and general manager of Grant Candies Ltd., testified that the milk chocolate is com-

bined with coconut oil and flavoring in the ratio of 60 lbs. of chocolate to 15 lbs. of coconut oil. The formula for the milk chocolate, exhibit 6, was issued by Grant Candies Ltd. To the best of Mr. Grant's knowledge all chocolate purchased by Grant was made to this formula. The formula, in evidence as exhibit 6, reads as follows:

Milk Chocolate Coating:

Content by Weight and Percentage

|  |  | Poundage | Percentage |
|---|---|---|---|
| Cocoa Solids | — | 116. # | 5. 487% |
| Cocoa Butter | — | 599. | 28. 73 |
| Whole Milk Powder | — | 290. | 13. 71 |
| Sugar | — | 1100. | 52. 03 |
| Lecithin | — | 8. | . 038 |
| Vanillin | — | 1. 25 | . 005 |
|  |  | 2114. 25# | 100. % |

Some of this milk chocolate in 10 lb. blocks was purchased from the Washington Chocolate Co. in Seattle, Wash. Part of the chocolate is not mixed with coconut oil, it is melted and used to coat the center.

Mr. Grant has also testified in the earlier *Border Brokerage Company* case, C.D. 2564. In that case he described the process as melting 10 lb. blocks of chocolate at 130 degrees to which coconut oil at a melting point of 92 degrees is added, 15 pounds of coconut oil to each 50 pounds of milk chocolate. The two products are blended together and two teaspoonfuls of lechithin, which is an emulsifier, and 2 ounces of vanilla flavoring are added. After further mixing the product is cooled and poured out to a thickness of one-half inch. And after cutting into individual pieces, the pieces are sent through a chocolate inrober which covers them with a one-eighth inch coating of milk chocolate.

Mr. Grant testified in the case at bar that the ratio for the center portion of the "Mello" is 60 lbs. of milk chocolate to 15 lbs. of coconut oil. Emulsifier and flavoring are added. The center of the Mello is lighter in color than the outer coating due to the additional coconut oil which is, of itself, a whitish color. The purpose of the coconut oil according to Mr. Grant in testimony in the incorporated record is to lower the melting point and thereby improve the eating quality. The coconut oil does not flavor the chocolate. The purpose of the coating with milk chocolate without additional coconut oil is to keep any of the fats, oil, butter, and coconut oil from working through to the outside and causing the exterior to discolor.

Plaintiff then presented the testimony of Dr. Quintin P. Peniston in the instant case. Dr. Peniston had made a particular study of vegetable fats and did considerable work with fats and oils. He had examined plaintiff's sample of coconut oil (exhibit 7) and in his opinion it is a form of fat. Dr. Peniston testified "the only real difference that

I have been able to see is that the fats are generally those fatty substances which are solid at room temperature—or usual temperature, according to the dictionary. Chemically, there is no clear differentiation between a fat and an oil." (R. 31) Dr. Peniston has worked with coconut oil at an elevated temperature which would cause it to liquefy for ease of handling. Any fat can be liquefied by raising the temperature beyond its melting point and conversely oil will solidify by cooling. He had never used the term coconut fat because in common parlance it is called coconut oil; but that did not change his opinion that it was in the same class of fatty substances, which are glycerides or fatty acids—specifically animal and vegetable oil and fat.

The sole factor distinguishing the claim at bar from the holding in *Border Brokerage Company, Inc.* v. *United States,* C.D. 2564, is the change in statute from the Tariff Act of 1930 to the Tariff Schedules of the United States. Plaintiff contends TSUS, by the addition of the words "with or without added fat" to the definition of chocolate in the statute, clearly brings "Mellos" within the classification of chocolate.

The explanatory notes to the Tariff Classification Study dated November 15, 1960, as to subpart B of part 10 of schedule 1 entitled Animal and Vegetable Products—Sugar; Cocoa; Confectionery— reads:

> In subpart B the provisions relating to cocoa have been brought together. The headnote is new and represents an effort to settle a question that has come up from time to time concerning the classification of sweetened chocolate and chocolate containing nuts, fruits, etc. The headnote would continue the practice of classifying sweetened chocolate under the provisions for chocolate (items 156.25 and 156.30) even though it may be regarded as confectionery, and the practice of classifying such chocolate containing added ingredients such as nuts, fruits, etc., under the provision for confectionery (items 157.10 and 157.11).

The Condensed Chemical Dictionary—Fifth Edition 1956—defines fats, coconut oil and chocolate as follows:

> fats. Solid glyceryl esters of higher fatty acids such as stearic and palmitic. Such esters and their mixtures are soft solids at ordinary temperatures. Liquid fats are known as animal and vegetable oils. [P. 473.]

> coconut oil. (coconut palm oil, coconut oil; coconut butter) Properties: White, semi-solid, lard-like fat; characteristic odor. Chief constituent: lauric acid. Soluble in alcohol, ether, chloroform and carbon disulfide.
>
>      *      *      *      *      *      *      *
>
> Uses: Soaps; butter substitutes; foodstuffs; cosmetics; candles; emulsions; dyeing cotton; alkyd resins; lubricating greases; synthetic detergents; source of glycerine and fatty acids. [P. 294–295.]

chocolate. The product formed by roasting and grinding fermented dried cacao beans (q.v.). Chocolate contains about 55% cocoa butter, some starch, traces of theobromine and tannin. Milk chocolate contains 30 to 35% cocoa butter, 12% milk solids and also added sugar. [P. 273.]

chocolate fat. Cacao butter (q.v.) is the true chocolate fat and the highest-grade chocolates contain it exclusively. Substitutes are used, to a greater or less degree, in the lower-grade chocolates. These substitutes usually consist of vegetable fats, such as palm-nut or coco-nut stearin. [P. 273.]

The case of *A. Spaeth & Co., Inc.* v. *United States*, 8 Cust. Ct. 312, C.D. 627 (1942), in which a product consisting of chocolate molded in the form of a flower and having a colored cocoa butter shape superimposed upon it was held to be confectionery under the Tariff Act of 1930, must also be distinguished. A portion of the item in that case consisted wholly of cocoa butter and contained only the fat of the cocoa bean, not the bean itself. That portion of the confection would not qualify as chocolate under the definition of chocolate found in TSUS. The merchandise at bar does consist wholly of ground cocoa bean, sugar, milk powder, flavoring, emulsifying agents and fat, and no portion of the mixture can be segregated which does not consist of all of these ingredients.

The cases of *H. L. Day Company* v. *United States*, 15 Treas. Dec. 26, Abstract 17884 (1908), and *C. J. Van Houten & Zoon, Inc., et al.* v. *United States*, 44 Cust. Ct. 223, C.D. 2178 (1960), affirmed 48 CCPA 116, C.A.D. 775 (1961), are distinguished by the fact that the added ingredients in both cases were nuts which are specified in TSUS as added ingredients that cause chocolate to be classified as confectionery.

Defendant did not introduce any evidence, and relies upon the assertion in the Tariff Classification Study that the headnote would continue the practice of classifying chocolate containing added ingredients as confectionery and cites the *Border Brokerage Company, Inc.* v. *United States* decision in C.D. 2564 as controlling. However, Congress did not have C.D. 2564 before it when the Study was undertaken. The Study was made in 1963 and C.D. 2564 was decided in 1965 so it could not have influenced Congress in formulating TSUS.

Under the commonly accepted meaning of the term fat, coconut oil falls within the express ingredients permitted in producing chocolate for customs purposes. Therefore, since TSUS does not limit the amount of added fat permissible in chocolate, the imported mellos are properly classifiable as chocolate under item 156.30 and the protest is sustained.

Judgment will be rendered accordingly.

CONCURRING OPINION

LANDIS, Judge: I concur in the result.