ROCKWELL IMPORT CORPORATION

v.

UNITED STATES.

C.D. 4664; Court Nos. 66/36518, etc.

United States Customs Court.

June 28, 1976.

Busby Rivkin Sherman Levy & Rehm, Washington, D. C. (Joseph S. Kaplan, Washington, D. C., of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Steven P. Florsheim, New York City, and Sidney N. Weiss, Washington, D. C., trial attorneys), for defendant.

RICHARDSON, Judge:

The merchandise in this case, described on the invoices as Gianduja Sweet Chocolate Coating, was manufactured in Neuchatel, Switzerland, and exported therefrom between September, 1963, and January, 1966, in 66-pound blocks. Upon entry at the port of New York, the merchandise was classified in liquidation under item 156.47, TSUS, as confectioners' coatings and other products (except confectionery) at the duty rate of 5 *per centum ad valorem.*

Plaintiff claims that the merchandise should be classified under item 156.25, TSUS, as sweetened chocolate in bars or blocks weighing over 10 pounds each at the duty rate of 0.8¢ per pound. Defendant claims that the merchandise was properly classified under item 156.47. Alternatively, defendant claims, on the basis of the evidence, that the merchandise should be classified first under item 157.10, TSUS, as candy, and other confectionery, not specially provided for at the duty rate of 14 *per centum ad valorem,* and secondly, under item 182.91, TSUS, as edible preparations

not specially provided for, other than gelatin, at the duty rate of 20 *per centum ad valorem.*

The record shows that the merchandise was manufactured by Chocolat Suchard S. A., a Swiss company in the business of manufacturing chocolate, confectionery and cocoa powder, in accordance with a batch formula known as Formula No. 856 (exhibit 1). The ingredients called for by Formula 856 are:

| Chocolate liquor | 19.875 percent |
|---|---|
| Sugar Powder | 40.601 " |
| Hazelnut-butter | 33.219 " |
| Cocoa-butter | 5.962 " |
| Lecithin | 0.341 " |
| Vanillin | 0.002 " |

Robert Tanner, now director of all production at Suchard's factory, and the sole witness at the trial, testified that he was responsible for production of the imported merchandise as Suchard's director of chocolate production at that time. Addressing himself to Formula 856 which he stated he prepared, he testified that chocolate liquor is the whole cocoa bean refined after shelling and roasting, and consists of about 50 to 58% cocoa butter, the balance being cocoa powder, that sugar powder is beet or cane commercial sugar, and that hazelnut butter is a liquid paste which is the result of grinding cleaned and roasted hazelnuts, and as to which nothing is added or subtracted. The witness stated that cocoa butter is added to certain formulae for the production of chocolate since many chocolate formulae, including Formula 856, call for an amount of cocoa butter in excess of what is contained in the chocolate liquor, that lecithin is an emulsifier which makes the chocolate more liquid, and that vanillin is an artificial flavoring.

When asked as to why hazelnut butter is introduced to the formulae, Mr. Tanner stated "To give the chocolate a hazelnut flavor" (R. 34), mentioning also that the butter has been refined to a point where no solid particles could be felt by the human tongue.

Mr. Tanner testified that Formula 856 contained at least 6.8% non-fat solids of the cocoa bean nib, but did not contain any vegetable fat, because the hazelnut butter, which he had previously testified contains 60 to 65% hazelnut oil, was added as flavoring and not as fat. He stated that a product produced under Formula 856 would not be known in the trade as a confectioners' coating because cocoa butter and hazelnut oil are too expensive to be used in such coatings. And in this connection, commenting on p. 215 of Russell Cook's book *Chocolate Production and Use,* New York (1963), he stated that he agreed with the author's distinction between "regular chocolate" and "confectioners' coatings", namely, that in confectioners' coatings, cocoa powder is substituted for chocolate liquor, and vegetable fats having a higher melting point than cocoa butter are used. He pointed out that hazelnut oil has a melting point of 0°C. while cocoa butter melts at 33°C.

When asked to explain why hazelnut flavoring elements are required to the extent of 33%, the witness testified (R. 67): "The hazelnut flavor is not a strong flavor as coffee or orange oil. And to get a good quality, you have to add this amount. If not, you don't have a hazelnut flavor in your chocolate, but a chocolate flavor." Exhibit 2, said to be a sample jar of hazelnut butter (as used in Formula 856) taken from a production batch, is in liquid form.

The witness did not consider Gianduja chocolate to be either candy or confectionery because candy and confectionery are small pieces ready to be eaten, and Gianduja chocolate as exported to the United States are big slabs of approximately 60 pounds. The witness had previously stated that Gianduja chocolate, which is said to mean "hazelnut chocolate", is remelted by the customer.

Plaintiff contends that the imported merchandise falls within the language of item 156.25 and not item 156.47. Plaintiff argues (brief, p. 16):

. . . An examination of Exhibit 1 shows, however, that whatever the per-

centage of oil in the hazelnut butter, it is not differentiated in the mass—the flavoring material is hazelnut butter. . .

Defendant contends that the merchandise at bar is not a chocolate within the ambit of item 156.25. Defendant argues (brief, p. 15):

. . . plaintiff lists hazelnut butter, which comprises over 33 percent of the merchandise, as a flavoring. It is defendant's contention that hazelnut butter is nothing more or less than ground hazelnuts.

Defendant goes on to state that since the merchandise contains a substantial amount of nuts it cannot be classified as chocolate but must be classified as a confectionery product.

Each party also contends that the provision it relies on is more specific than the other, as between item 156.25 and item 156.47.

The presence of hazelnut butter in Formula 856 also leads defendant to contend in the alternative, first, that the imported merchandise if not confectioners' coating, should be classified under item 157.10 as candy, and other confectionery, not specially provided for. Defendant argues (brief, p. 26):

. . . Since, in the instant case, the undisputed facts are that the merchandise is 33% chopped hazelnuts by weight, the merchandise should be classified under item 157.10.

And defendant's second alternative claim is that the imported merchandise, if not a confectioners' coating or candy or confectionery, is an edible preparation within the meaning of item 182.91, contending that the record is clear that it is an edible preparation and that it is not chocolate for tariff purposes.

Disposition of the instant controversy appears to hinge on the effect of the presence of hazelnut butter in the Formula 856 coating in issue. Chocolate is limited to products (whether or not confectionery) consisting wholly of ground cocoa beans, with or without added fat, sweetening, milk, flavoring, or emulsifying agents. *Headnote 1, Part 10B, TSUS Schedule 1.* Confectioners' coatings are products, except confectionery, containing by weight not less than 6.8% non-fat solids of the cocoa bean nib and not less than 15% of vegetable fats other than cocoa butter. *Item 156.47, TSUS.* The chocolate provision identifies all of the ingredients which can be included in a product contending for classification as a chocolate. The confectioners' coating provision only identifies two of the ingredients which are prerequisite to classification of a product as a confectioners' coating, and as to those two ingredients minimum amounts are specified. As to the two provisions the court is of the opinion that the chocolate provision is the more specific provision and the more difficult to satisfy. It has no open-ended language as in the case of the confectioners' coating provision.

The evidence indicates that confectioners' coatings are generally made with cheaper ingredients than those used in the production of chocolate, namely, cocoa powder is substituted for chocolate liquor, and vegetable fats other than cocoa butter are used. And corroboration of this evidence is reflected in the findings of the Tariff Commission. See *Summaries of Trade and Tariff Information* (1969), Schedule 1, Vol. 9, pp. 71–72. As for the ingredients in the imported merchandise, with the exception of the hazelnut butter, they are associated more readily with the production of chocolate rather than with the production of confectioners' coatings. And the only question is whether the presence of hazelnut butter in the formula under which it is made makes a difference.

The presence of nuts in the composition of imported merchandise said to be chocolate has led to repeated rejection of claims for classification of such merchandise under sweetened chocolate provisions of predecessor Tariff Acts. (*C. J. Van Houten & Zoon, Inc., Bluefries New York, Inc. v. United States*, 48 CCPA 116, C.A.D. 775 (1961) and the cases cited on page 120. In all of these cases the courts were dealing with the presence of *solids* in the alleged chocolate.

In C.A.D. 775 it was noted by our appellate court that crushed hazelnuts were considered not to be merely flavoring. In this connection, this court stated in that case (44 Cust.Ct. 223, C.D. 2178 (1960) at page 229):

Flavoring is a substance used to impart flavor to the article to which it is added. To accomplish this result, the flavoring substance would have to be in a form in which it could permeate the article being flavored and thus impart the desired flavor to the whole. It is difficult to see how the chopped nuts in this case could penetrate and flavor the chocolate used in producing the instant bars in the sense that the orange oil, for example, flavors the chocolate in the bar labeled "Orange Milk Chocolate" in plaintiffs' collective exhibit 2, or, for that matter, the lecithin or vanillin flavors the chocolate in the bars in issue. It is clear from an examination of the illustrative sample that the separate identity of the chopped nuts has been preserved and that they constitute an independent substance with an independent flavor. They impart to the bar a texture distinctively different from the others in the exhibit and are not a mere flavoring agent.

The posture of the courts with respect to nuts and as to flavoring *vis-a-vis* chocolate under predecessor Tariff Acts has been preserved under the TSUS. *Tariff Classification Study*, Schedule 1, page 163. However, in the only case involving the chocolate issue decided under TSUS thus far, namely, *Border Brokerage Co., Inc. v. United States*, 62 Cust.Ct. 624, C.D. 3836 (1969) involving the usage of coconut oil in the chocolate formula, the issue of the propriety of a nut product as a flavoring agent was left open. The court in C.D. 3836 did, however, conclude expressly with respect to the ingredient fat (and by necessary implication with respect to the other enumerated ingredients permitted to be added to chocolate for classification purposes) that quantitative restrictions on the statutorily specified ingredients are nonexistent under the TSUS. Indeed, it is difficult to perceive of how the *de minimis* rule could apply to the statutory definition of chocolate under the TSUS as to the named ingredients without being self-defeating of the chocolate standard.

In this case counsel for the Government has referred to the hazelnut butter in the brief as "ground hazelnuts" and "chopped hazelnuts" with the obvious connotation of a solid. And if this was indeed the case here under the evidence of record the court would have no difficulty in disposing of the issue in the manner contended for by the Government consistent with judicial precedent noted herein. But the uncontroverted evidence before the court establishes without question that the hazelnut ingredient added to Formula 856 is a *liquid*. It is well settled that a component material must be considered in its condition when it enters the article in question and not at any other time when its name and nature are different. *United States v. Veit, Son & Co.*, 8 Ct.Cust.Appls. 290, 294, T.D. 37540 (1918). And in this context it is clear that although *grinding* and *chopping* may have been the processes by which hazelnuts were prepared for usage in Formula 856, it is equally clear that in the condition the resulting product enters into the formula, it can no longer be regarded as hazelnuts anymore than say, peanut butter, can be regarded as peanuts.

In liquid form the hazelnut butter obviously intermixes with the other ingredients in Formula 856 and disperses itself throughout the mixture. After that, if it manifests itself at all in the mixture it would have to be in the taste inasmuch as no trace of it remains otherwise cognizable by the human senses as would be the case with the chopped hazelnuts in the chocolate bars in C.D. 2178. The evidence at bar establishes that the hazelnut butter was expressly added as a flavoring agent. And although not done in this case, the Tariff Commission reports that chocolate, with nuts ground sufficiently fine so as not to be observable in the chocolate, has generally been classified as sweetened chocolate under item 156.30 (the provision for forms of sweetened chocolate other than bars or blocks of 10 pounds or more). *Summaries of Tariff and Trade Information* (1969), Schedule 1, Vol. 9, page 84.

Under the evidence presented in this case the court is compelled to conclude that the hazelnut butter in Formula 856 is a flavoring agent, that its presence in the formula is consistent with the statutory definition of chocolate in issue here, and that the imported merchandise should, therefore, be classified under item 156.25 as a chocolate and not under item 156.47 as a confectioners' coating. Further, inasmuch as the imported chocolate was prepared for usage as a coating and exported in bulk quantities, it must be regarded as a *producer's* commodity, and as such, would not seem to respond to the designation "candy" under item 157.10, which covers a *consumer's* article. The coatings at bar undoubtedly will be utilized in the manufacture of candy, among other things. But as imported the coatings do not come within the ambit of the term "candy" as that term is commonly understood. And the court does not reach the question of whether the imported chocolate is classifiable under item 182.91 as an edible preparation since this provision is at best residual.

For the reasons stated plaintiff's claim for classification of the imported merchandise as sweetened chocolate under item 156.25 is sustained, and defendant's alternative claims for classification of the subject merchandise under item 157.10 or 182.91 are overruled.

Judgment will be entered accordingly.