60 CCPA

**NORTHAM WARREN CORP., Alltransport, Inc., et al., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5455.**

United States Court of Customs and Patent Appeals.

March 22, 1973.

---

**648**

Barnes, Richardson & Colburn, New York City, Attys. of Record, for appellants. E. Thomas Honey, David O. Elliott, New York City, of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Herbert P. Larsen, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN, and LANE, Associate Judges, and CLARK, Justice, (Ret.), sitting by designation.

RICH, Judge.

This appeal is from the decision and judgment of the United States Customs Court, First Div., 65 Cust. Ct. 584, C.D. 4142 (1970), overruling a protest against the classification of certain importations from the Netherlands of "pearl essence" pigment, containing 0.15 percent of a coal tar derivative known as "Tinopal PCRP," pursuant to paragraph 27(a)(4), (5) of the Tariff Act of 1930, as modified by T.D. 52739, which provides for mixtures in part of any of the coal tar products provided for in paragraph 27(a). We affirm.

The importation consists primarily of "pearl essence," a pigment which has been extracted from fish and fish scales and is used to give opacity and brightness to certain types of paint, varnish, lacquer, and cosmetics. The imported merchandise was used in making nail polish. Appellants concede that Tinopal is a coal tar derivative useful as an optical brightener. Tinopal, in the form used in the importation here, Tinopal PCRP, contains a phthalic ester derived from the coal tar derivative "phthalic acid" identified in paragraph 27(a)(1) of the Tariff Act of 1930.

Paragraph 27(a)(4), (5), as modified by T.D. 52739, reads:

> All mixtures, including solutions, consisting in whole or in part of any of the products provided for in subdivision (1), (2), or (3) of paragraph 27(a), Tariff Act of 1930 (except sheep dip and medicinal soaps, and except products chiefly used as assistants in preparing or finishing textiles) . . . 3½¢ per lb.
>
> and 25% ad val.

Paragraph 28(i) reads:

> Any article or product which is within the terms of paragraph 1, 5, 37, 39, 60, 66, 82, or 1687, as well as within

the terms of paragraph 27, 28, or 1651, shall be assessed for duty or exempted from duty, as the case may be, under paragraph 27, 28, or 1651.

Appellants claim that the small amount of Tinopal in the importations ought not to require classification of the goods within paragraph 27(a)(4), (5), basing their argument upon the maxim *de minimis non curat lex*. Without this small amount of Tinopal the classification would be provided for eo nomine as "pearl essence" under paragraph 66 of the Tariff Act of 1930, as follows:

Paragraph 66, as modified by T.D. 54108:

Pigments, colors, stains, and paints, including enamel paints, whether dry, mixed, or ground in or mixed with water, oil or solutions other than oil, not specially provided for:

\*　\*　\*　\*　\*　\*

Pearl essence . . . 11% ad val.

Appellants contend that the importations should be as "pearl essence" within paragraph 66 despite the small amount of the coal tar derivative therein. Appellants summarize their argument by stating the issue narrowly as follows:

Did the very small amount of a coal tar derivative present in the imported mixture, in the quantity of a fraction of a percent, fulfilling no commercial function, not affecting the character or use of the mixture, not detected by the importer, and not called for by the importers' specifications, operate to affect the tariff classification of the imported merchandise?

The Customs Court held that the *de minimis* doctrine did not operate to take the importations out of the strict wording of paragraph 27(a)(4), (5) because the amount of Tinopal present in the imported merchandise, albeit very small, was shown by the evidence to be "sufficient to perform a function as an optical brightener" in the pearl essence and the evidence "does not permit any conclusion other than that its introduction in the importation was deliberate." As the

Customs Court saw it, the cases which deal with the *de minimus* rule provide that these factors are determinative of the legal issue.

Appellants quarrel not so much with the legal basis for the Customs Court decision as with the question whether there is substantial evidence to support the findings that Tinopal performs a functional role as an optical brightener and was present in the importation in a quantity sufficient to perform a useful function. We find that the evidence fully supports these findings by the Customs Court, which are not clearly contrary to the weight of the evidence. United States v. F. W. Myers & Co., Inc., 45 CCPA 48, C.A.D. 671 (1958).

Appellants rely upon the following testimony of one Dr. Lauffer, a retired cosmetic chemist then serving as a consultant (emphasis ours):

Q. In your opinion, Doctor, could that have added any desirable property to the pearl essence that Bonda sold to Northam? A. No.

Q. Would it contribute to the product, or in any way improve the product that it ultimately was used in?—namely, the nail polish. A. No.

\*　\*　\*　\*　\*　\*

Q. Doesn't that addition enhance the commercial quality of a product? A. No, not in our application, in my opinion. *We didn't ask for Tinopal to be used, and we never saw the need of it in the nail polish.*

Q. Was not this particular merchandise ordered pursuant to specific specifications? A. Yes, there were specifications, but *none of them called for addition of any optical brightener.*

\*　\*　\*　\*　\*　\*

Q. What function, if any, would it have performed in the nail polish? A. I assume from information I have on Tinopal that *it would increase the whiteness of the film produced by the lacquer.*

Q. In the product, in the final product?—I am speaking now of the product that you made: the nail polish. A. Yes, Yes. If it had any effect whatever, it would be a brightening of the, of the white appearance of the lacquer—but that *was not an effect that we were particularly desirous of producing. We were buying the pearl for its scintillation, not for its whiteness.* If we wanted to make a white lacquer we would have used an opaque white pigment.

Dr. Lauffer also testified, in reviewing his earlier testimony when recalled for redirect, that the small quantity of Tinopal "would be functioning for its purpose of being an "optical brightener" and stated (emphasis ours):

A. * * * *I didn't intend to say that it couldn't act as an optical brightener.* What I did say, I believe, was that we *did not ask to have an optical brightener included,* and we didn't especially want that effect in our lacquer.

Q. *Isn't it possible, sir that that is what you got?* A. *Oh, it may be, but I don't know why it was added*; I don't know why it would have been added for any other reason, but we did not ask for it to be added for that reason.

We find the evidence supports the Customs Court's findings that Tinopal functioned as an optical brightener and was present in a quantity sufficient to perform a useful function. The testimony is replete with assertions that the Tinopal was neither requested as an addition to the imported pearl essence nor needed to produce the particular nail polish product which was made using the imported material, but customs duty

is assessed upon ingredients of the goods imported, not according to the motives of the originators of the merchandise abroad or the usefulness of the properties imparted by those ingredients to the importer.

In the Customs Court, as well as here, appellants alleged that E. Fougera & Co. v. United States, 49 Treas. Dec. 986, C.D. 41632 (1926) is support for their proposition that the language "in part of" in paragraph 27(a)(4), (5) is not intended to encompass so insubstantial an ingredient as the 0.15 percent Tinopal. The Customs Court accepted "that case as authority for excluding from consideration minute quantities of coal tar derivative ingredients which do not participate in the primary functional role of the mixture" but distinguished the case on its facts because in *Fougera* the coal tar derivative ingredient present as 0.07 or 0.44 percent of the imported medicinal preparations did not perform a medicinal function, whereas in "the instant case * * * the coal tar derivative ingredient performed a function affecting the appearance of a product whose appearance is part of its functional role and in which said ingredient is present in a quantity sufficient to do its work." We agree with this distinction.

Appellants argue before this court that the language of *Fougera* that the phrase "in part of" means "to a substantial part *in a commercial sense*" (emphasis ours) requires a different result when the *commercial* quality of the ultimate nail polish produced from the pearl essence is not enhanced by the Tinopal. We do not find this argument persuasive.

The decision and judgment of the Customs Court is affirmed.

Affirmed.