## ACETO CHEMICAL CO., INC.

v.

## UNITED STATES.

C.D. 4625; Court No. 72–2–00263.

United States Customs Court.

Dec. 29, 1975.

**1390**

Murray Sklaroff, New York City, for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Ira J. Grossman, New York City, trial attorney), for defendant.

WATSON, Judge:

These cross-motions for summary judgment center on the presence in the imported fungicide of about three-quarters of a percent of a benzenoid wetting agent. The wetting agent, which is not itself fungicidal in nature, eases the dis-

persion of the powder in liquid and thus aids the spreading and penetration of the fungicide in wet spray form. It should be noted that the importation may also be applied in a dry form by dusting.

The government, relying on the presence of the wetting agent, classified the importation as a mixture in part of a "benzenoid" product.[1] Plaintiff claims the importation should properly be classified as a thiuram[2] in accordance with the identity of the fungicidal ingredient present in excess of 99 percent.

Since the benzenoid ingredient is not present in an amount sufficient to make it a quantitatively significant importation of that ingredient, the dispute centers on the function of the ingredient in the importation.

Plaintiff's claim[3] is grounded on the assertion that the language "in part" of the classified provision does not refer in the present circumstances to a minute ingredient which is not fungicidal in nature. Defendant argues that the wetting agent plays a part in enhancing the fungicidal function and the importation is therefore "in part" of the wetting agent.

Both parties rely on the decisions in *United States v. Cavalier Shipping Co., Inc.,* 478 F.2d 1256, 60 CCPA 152, C.A.D. 1103 (1973), *aff'g* 67 Cust.Ct. 440, C.D. 4317, 337 F.Supp. 447 (1971), and *Northam Warren Corp. v. United States,* 475 F.2d 647, 60 CCPA 117, C.A.D. 1092 (1973), *aff'g* 65 Cust.Ct. 584, C.D. 4142 (1970). In the *Cavalier Shipping* case, the presence in an insecticide of about 2 percent of a benzenoid warning agent (chloropicrin or "tear gas") was held not to justify classification as a mixture in part of a benzenoid product. In the *Northam Warren* case the presence in a

1. Item 409.00 of the Tariff Schedules of the United States, dutiable in the amount of 7 cents per pound plus 45 per centum ad valorem.

2. Item 425.36 of the TSUS, dutiable at the rate of 10.5 per centum ad valorem.

3. Plaintiff failed to prove its alternative claim that an established and uniform practice existed to classify this merchandise under item 425.36.

pigment of less than two-tenths of a percent of a "benzenoid" optical brightener was held to justify classification under a "mixture in part" provision similar to that involved herein.[4]

The plaintiff sees these cases as supporting the proposition that a minute benzenoid ingredient will dictate the classification of an importation only if it performs the primary function of the article in which it is contained. Defendant sees the general proposition as being that a minute ingredient will control the classification so long as it "plays a part" in the principal function.

■ It seems reasonable to assume that all intentional ingredients serve some functional purpose in connection with the use of the particular product. Thus, it is necessary to draw a distinction between those minute ingredients which are to be considered "significant" and thus capable of controlling classification, and those minute ingredients which are not significant. The only clear and readily determinable distinction which suggests itself to me is between minute ingredients whose use is to perform the *very function which is the function of the importation* and minute ingredients whose use is to *assist* in the primary function. In the former category I would place the optical brightener ingredient involved in *Northam Warren*. Minute as it was, it was directly involved in the appearance of a product used to give opacity and brightness to certain types of paint, varnish, lacquer and cosmetics. Therefore its "significance" in determining a tariff classification could not be minimized. In the latter category I would place the chloropicrin ingredient used as a warning device in an insecticide in *Cavalier Shipping* and the wetting agent involved herein. In this latter category I would also place the salicylic acid ingredient used as a preservative and solvent in the medicinal preparations involved in *E. Fougera & Co. v.*

*United States*, 49 Treas. Dec. 986, T.D. 41632 (1926).

The thread which unites the latter three ingredients is not their failure to "play a part" in the use of the importation or their failure to have sufficient importance in the use of the importation, but rather it is their lack of the exact characteristic which is the primary use characteristic of the importation.

Indeed the lifesaving warning function of the chloropicrin may, in an absolute sense, be the most important use-related function of all the ingredients under discussion. The preservation of a medicinal preparation is also extremely important—certainly more momentous than the addition of an increment of brightness to a cosmetic product. Yet, only the optical brightener was significant from a classification standpoint in making the importation "in part" of a benzenoid product. This came about, not because of its importance, but because its performance of the main function of the importation prevented the application of the de minimis rule.

This is the underlying principle I discern in the opinion of the CCPA in *Cavalier* when the court states at page 156 of 60 CCPA, at page 1259 of 478 F.2d that "[t]he real issue, therefore, lies in whether the chloropicrin * * * was in fact present in 'commercially significant amount.'"

The court was thereby expressing a test based on the full extent of the de minimis rule contained in general headnote 9(f)(iv). Both the headnote, which defines "in part of" as indicating the presence of "a significant quantity of the named material," and the Tariff Classification Study,[5] which states that "in part of" is used to convey an intent that the material be present in "commercially significant amount," support a view that only in the most limited circumstances should a quantitatively min-

---

4. Paragraph 27(a)(4), (5) of the Tariff Act of 1930, as modified by T.D. 52739, provided for mixtures in part of certain coal tar products.

5. *Tariff Classification Study Submitting Report*, November 15, 1960, page 14.

ute quantity control classification. The appellate court further stated that:

* * * [W]e cannot reconcile the expressed intention with respect to the meaning of "in part" in the TSUS with the restricted concept that any purposeful addition of a benzenoid product, be it to preserve life or to enhance salability, must render the article "in part" of that product. The distinction previously drawn on the basis of the primary functional role of the merchandise better satisfies that which we consider to be the true intent of the language of the TSUS. [60 CCPA at 157, 478 F.2d at 1260.]

In light of the above, when the appellate court at page 156 of 60 CCPA, at page 1259 of 478 F.2d, spoke of the exception from the de minimis rule for "* * * quantitatively insignificant amounts which nonetheless are present in sufficient quantity to perform a part in the primary function of the article," I read that as expressing, not a standard giving significance to any role *related* to the primary function but only to those roles which *are* the primary function. As stated earlier, if mere relation to the primary function is sufficient then de minimis distinctions cannot be made in a logical, consistent and predictable manner because all intentional ingredients have some relation to the primary function.

 In short, I believe it is consistent with the basic intention of the tariff act that only a significant ingredient determine classification. I define significance, in the case of a minute ingredient (which would ordinarily be treated as de minimis), as the performance of the principal function, i. e., an optical function in a pigment, an insecticidal function in an insecticide, a medicinal function in a medicine and a fungicidal function in a fungicide. Since the wetting agent herein does not perform a fungicidal function, it should, consistent with its insignificant quantity, be treated in the typical de minimis fashion.

For the above reasons, it is

ORDERED, that plaintiff's motion for summary judgment be, and the same hereby is, granted, and it is further

ORDERED, that the merchandise herein be classified as a thiuram under item 425.36 of the TSUS.