The UNITED STATES, Appellant,

v.

ACETO CHEMICAL CO., INC., Appellee.

Customs Appeal No. 76–10.

United States Court of Customs and Patent Appeals.

April 21, 1977.

and holding that a fungicide containing less than one percent benzenoid product, as a wetting agent, is properly classified by the principal ingredient, thiuram, under item 425.36, Tariff Schedules of the United States (TSUS). We affirm.

The merchandise, described on the invoices as "Thiram 76% W.P. green," was classified under item 409.00, TSUS, as a mixture in part of a benzenoid product provided for in Subpart C of Part 1 of Schedule 4, TSUS.[1] The importation consists of thiuram, inert materials, and less than one percent of a benzenoid wetting agent,[2] and, as an agricultural fungicide, is used by dispersing in water and spraying. Appellee (importer) urged that the merchandise be classified under item 425.36 as thiuram,[3] the fungicidal ingredient, because the benzenoid ingredient was de minimis. In the alternative, appellee claimed that the classification under item 409.00 indicated a change from the established administrative practice and was not implemented pursuant to section 315(d), Tariff Act of 1930, as amended (19 U.S.C. § 1315(d)).

Pertinent statutory provisions are:

Schedule 4.—Chemicals and Related Products

\* \* \* \* \* \* \*

Part 1.—Benzenoid Chemicals and Products

Part 1 headnotes:

1. Except as specifically set forth in the headnotes to other parts of this schedule, all products described in this part shall be classified hereunder even if more specifically described elsewhere in this schedule.

\* \* \* \* \* \* \*

Subpart C.—Finished Organic Chemical Products

Subpart C headnotes:

\* \* \* \* \* \* \*

2. The term "pesticides" in item 405.15 means products, such as insecticides, rodenticides, fungicides, herbicides, fumigants, and seed disinfectants, chiefly used to destroy undesired animal or plant life.

\* \* \* \* \* \* \*

Products obtained, derived, or manufactured in whole or in part from any product provided for in subpart A or B of this part:

\* \* \* \* \* \* \*

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Ira J. Grossman, Sidney N. Weiss, attorneys of record, New York City, for appellant.

Murray Sklaroff, attorney of record, New York City, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, JJ., and NICHOLS, Judge, United States Court of Claims.

BALDWIN, Judge.

This is an appeal from the order of the Customs Court, 408 F.Supp. 1389, 75 Cust.Ct. 167, C.D. 4625 (1975), granting plaintiff's motion for summary judgment

---

1. Duty was assessed thereon at the rate of 7¢ per lb. plus 45% ad valorem, the rate in effect during calendar years 1966 and 1967, when the merchandise was imported from Holland.

2. The benzenoid wetting agent, if imported alone, would be classified under item 405.35.

3. Under the provisions of item 425.36, thiuram was dutiable at the rate of 10.5% ad valorem at the time of import.

405.15 Pesticides ..............3.5¢ per lb. +
25% ad val.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

409.00 Mixtures in whole or in part
of any of the products pro-
vided for in this subpart ..7¢ per lb. +
45% ad val.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Part 2.—Chemical Elements, Inorganic and
Organic Compounds, and Mixtures

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Subpart D.—Organic Chemical Compounds

Subpart D headnote:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Nitrogenous compounds:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

425.36 Thiourea, thiourea dioxide,
and other thioamides; thi-
ocarbamates, thiocyanates,
thiurams, and isothiocya-
nates .................10.5 ad val.

The question considered by the Customs Court was whether the presence of a minute quantity of benzenoid ingredient in the importation was de minimis (not controlling classification of the importation), or warranted classification of the importation under an "in part" of benzenoid product provision. Urging the "in part" category (item 409.00), appellant argued that the minute ingredient would determine the classification if the minute ingredient played a part in the principal function of the importation. Appellee, on the other hand, argued that the minute ingredient must perform the primary function of the importation to overcome the de minimis status.

In reaching a decision, the lower court discussed the test for the de minimis ingredient which is directly related to "in part" classification. The lower court considered General Headnote 9(f)(iv) of the TSUS, which defines "in part" as indicating an ingredient which is of "significant quantity." Coupling this with the Tariff Classification Study[4] interpretation of "in part" classification as indicative of a "commercially significant amount," the court reached the conclusion that a minute ingredient controls classification only when it performs the primary function of the importation. The court further concluded that this rule applied only in the most limit-

ed circumstances. The court relied on *United States v. Cavalier Shipping Co.,* 478 F.2d 1256, 60 CCPA 152, C.A.D. 1103 (1973), which discusses the quantitative-functional test for de minimis ingredients.

On the facts of the present case, the lower court found that the minute ingredient, a benzenoid wetting agent, did not perform the fungicidal function of the importation. The benzenoid compound was a de minimis ingredient and did not control the classification of the importation under the "in part" provision of item 409.00. The court held that the merchandise should have been classified by its principal ingredient, thiuram, under item 425.36.

## OPINION

We agree with the conclusion reached by the Customs Court. However, we further distinguish the relevant cases. Our discussion does not repeat the detailed analysis of a line of cases presented by the Customs Court. The same line of cases is treated in *Cavalier* which summarized their holdings. We use that case as a starting point.

In *Cavalier* the importation was an insecticide containing approximately two percent chloropicrin, a benzenoid derivative, which exhibits pesticidal properties in high concentrations. However, its presence in a low concentration in the importation served only as a warning agent. The Government urged alternative classifications of item 405.15 as pesticides "obtained, derived, or manufactured &ast; &ast; &ast; in part" from a benzenoid product provided in Subpart A or B of Part 1 of Schedule 4 and item 409.00 as a "mixture &ast; &ast; &ast; in part of" a benzenoid pesticide product provided in Subpart C of Part 1 of Schedule 4. The court applied a quantitative-functional test. The quantitative test was briefly discussed as no argument was made that 1.4% to 2% of the chloropicrin was quantitatively significant. Applying the second part of the test, the court concluded that, in the above concentration, chloropicrin was not pesticidally active and was, therefore, a de minimis ingre-

4. United States Tariff Comm'n, Tariff Classification Study, Submitting Report 14 (1960).

dient. The classification under either of the two "in part" benzenoid product provisions urged by the Government was denied.

In contrast, the court applied an "in part" classification for a coal tar derivative in *Northam Warren Corp. v. United States,* 475 F.2d 647, 60 CCPA 117 (1973). Although the coal tar derivative was present in the amount of .15 percent of the importation, the court decided that the derivative was useful as an optical brightener which was the primary function of the importation principally of "pearl essence." The court concluded that the coal tar derivative was not a de minimis ingredient, and the importation was properly classified under paragraph 27(a)(4), (5) of the Tariff Act of 1930 as modified by T.D. 52739, as a "mixture * * * in part" of coal tar products identified in paragraph 27(a).

In the present case, the Government argued for classification under item 409.00 and further contended that *Cavalier* is not controlling because item 409.00 was not a proper classification for the benzenoid derivative being considered in that case. The Government objected to *Cavalier* because of the allegedly questionable propriety of the item 409.00 classification which the Government presented in that case,[5] and because the holding in *Cavalier* makes item 409.00 useless. We are not persuaded by the Government's argument. In *Cavalier,* the court considered two "in part" provisions along with item 429.48, not itself an "in part" provision. The court decided that item 429.48 was the proper classification. In reaching the decision, it applied the quantitative-functional test to make the initial determination whether the importation should be classified under an "in part" provision or not. The test was not used to distinguish *between* the applicable "in part" provisions. At this juncture, the Government's argument departs from the significance of *Cavalier.* No perversion is worked upon item 409.00; it does not become a nullity as a result of the holding in *Cavalier.* The court applied the quantitative-functional test to the minute ingredient to make the preliminary determination that that ingredient did not qualify the importation as an "in part" product. Item 409.00 remains a viable classification for an importation which consists of an "in part" ingredient.

Furthermore, we see nothing inconsistent in the results reached in *Northam* and *Cavalier.* The cases are distinguishable on their facts. In *Northam,* the importation was "in part" a coal tar derivative for the reason that the derivative, although present in a minute quantity, functioned as an optical brightener in conjunction with the principal ingredient of the importation. We note that *Northam* was decided under the Tariff Act of 1930 which had no General Headnote 9(f)(iv). Notwithstanding the dichotomy between the decisions, both cases applied the quantitative-functional test to determine whether a minute ingredient was de minimis.

We draw one other distinction between the cases. The warning agent in *Cavalier* performed its function before the pesticidal ingredient. The chloropicrin operated to warn the user that the pesticidal mixture was escaping into the atmosphere, whereas the optical brightener in *Northam* performed its function continuously with the principal ingredient, also a brightener.

In the case at hand, the primary function of the importation is fungicidal. However, the benzenoid ingredient, present in less than one percent, which the Customs Court concluded to be an insignificant quantity, acts as a wetting agent and does not participate in the primary function of the importation. The benzenoid wetting agent performed its function of increasing the spreading of the liquid on the surface of

---

5. In *Cavalier,* the court stated that "chloropicrin falls within the scope of subpart A or B of Schedule 4, Part 1. The record also establishes that chloropicrin is capable in itself of serving as a pesticide but not in concentrations as low as 1 or 2%." 478 F.2d at 1257, 60 CCPA at 154. Item 409.00 relates to products in subpart C which includes pesticides obtained, derived or manufactured in whole or in part from any product in subpart A or B.

the target organism [6] before the principal ingredient, the pesticide, began to operate. Therefore, the benzenoid ingredient falls within the de minimis status. Refining the quantitative-functional test, we emphasize the observation that the benzenoid wetting agent exhausts its function before the principal ingredient begins to operate. Using this refined test, we conclude that the importation now before us is more properly classified under item 425.36 by its principal ingredient, thiuram, rather than under item 409.00 as a mixture "in part" of a benzenoid ingredient. We acknowledge that the underlying Congressional intent for tariff classification is to assess mixtures at the highest rate applicable. However, on the facts of this case, the Customs Court order is in harmony with Congressional intent for application of the "in part" provisions. We conclude that the evidence of record supports the order of the Customs Court and *affirm*.

MILLER, Judge, dissenting.

The majority correctly notes that *Cavalier* and *Northam* are distinguishable from each other on their facts, but errs in failing to distinguish this case from *Cavalier*. In *Cavalier*, the use (as a warning agent) related to the *applicator*. Here, as in *Northam*, the use (as a wetting agent) not only relates directly to the primary function of the imported fungicide but enhances that function, thus meeting the "test" approved in *Cavalier* that the benzenoid ingredient "plays a part in the article's principal function." The evidence clearly shows that the wetting agent improves the essential wetting, spreading, and penetration of the fungicide when applied in liquid form. Moreover, in aiding penetration of the fungicide, the wetting agent obviously performs its function concurrently with the killing process of the fungicide, thus meeting the further test used by the majority to distinguish *Northam* from *Cavalier*. Accordingly, the two orders of the Customs Court should be overruled.

6. *Wetting agent.* A substance or composition that, when added to a liquid, increases the spreading of the liquid on a surface or the penetration of the liquid into the material * * *. *Concise Chemical and Technical Dictionary* (1974).