(C.D. 4869)

EVVAN IMPORTERS, INC., PLAINTIFF, *v.* UNITED STATES, DEFENDANT

Court No. 78-2-00309

(Decided August 13, 1980)

*Samuel W. Gilman*, for the plaintiff.

*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Susan C. Cassell*, trial attorney), for the defendant.

WATSON, Judge: This action raises the question of whether stabilized turquoise is a semiprecious stone. The stabilized turquoise involved was low-grade, porous turquoise, mined in Arizona. It was stabilized by a vacuum process in which its pores were filled with clear plastic. This decreased its tendency to crumble when cut and also gave it a somewhat darker or "wetter" appearance. After stabilization the turquoise was sent to Israel for cutting and polishing.

Upon importation, it was then classified as parts of jewelry under item 740.38 of the Tariff Schedules of the United States (henceforth TSUS) and assessed with duty at the rate of 27½ percent ad valorem. Plaintiff claims that it should be classified as semiprecious stones under item 520.39 of the TSUS and should therefore be assessed with duty at the rate of 2½ percent ad valorem.

Defendant takes the view that the addition of plastic makes the importation "more than" or "other than" a semiprecious stone and that it is not considered a semiprecious stone in the trade and commerce

52

of the United States. Defendant's expert witness opined that the application of foreign substances to turquoise made it "unnatural" and that stabilization by impregnation with plastic made it a manufactured product. Defendant referred to the State laws of those States in which turquoise is an important component of native American jewelry and stressed that those laws consider stabilized turquoise as "unnatural."

Plaintiff's expert witness testified that stabilization did not change the basic characteristics of the turquoise stones or their identity as semiprecious stones and was consistent with accepted traditional methods of treating turquoise such as waxing and oiling. Plaintiff also relied on R. Shipley's *Dictionary of Gems and Gemmology* (6th ed.) which stated that "plastic, paraffin, wax, oil, and other substances are often impregnated in turquoise to improve its color." In addition, plaintiff referred to R. Webster's *Gems and Their Sources, Descriptions and Identification*, which states as follows at page 218:

> Specimens of turquoise are sometimes oiled or waxed and are considered commercially acceptable and presumably the method of hardening the soft friable American turquoise by impregnating with colloidal silica is also acceptable.

The court is of the opinion that plaintiff's position is correct as a matter of law and that there is an acceptable range of treatment to which a stone can be subjected without changing its basic identity. In the court's view the guiding principle in this case is that a tariff description by name describes all forms of the named article. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935); *T. M. Duche & Sons, Inc., et al.* v. *United States*, 44 CCPA 60, C.A.D. 638 (1957). The use of a foreign substance to strengthen the stone's porous structure is in the nature of a preservation of its essential characteristics and an aid to its use in a conventional manner. To the extent that the stabilization improves its surface color it is a minor enhancement. In neither respect does stabilization transform or manufacture the stone into something else. A distinction must be made between State laws defining turquoise for the purpose of maintaining the integrity of arts and crafts and tariff laws naming "semiprecious stones" as a category of articles of general commerce. The tariff laws must be read more broadly because they are meant to classify articles in a more diversified context. That is to say, they must take into account the endless variations or modifications to which named articles are reasonably subject. They are not designed to protect or preserve one ideal or traditional form at the expense of another.

To call the importations "more than" turquoise is mistaken. The case law concept of "more than" does not mean that more than one substance is present in an object. It means that from the standpoint of functional

analysis the object is a combination not adequately described by a particular tariff term. For example, the term "motor" may not include articles which consist of motors and gears or motors and clutches. See *United States* v. *A. W. Fenton Co., Inc.*, 49 CCPA 45, C.A.D. 794 (1962); *United States* v. *Acec Electric Corp.*, 60 CCPA 113, C.A.D. 1091, 474 F. 2d 1009 (1973). Here the impregnated plastic has no divergent functional aspect. In fact, it simply aids in the single normal use of the stone. Its presence, therefore, does not make the stone more than a stone in a functional sense.

If we turn to consider the stone strictly as a mineral substance then the consequence of the insertion of the foreign material is more easily discussed. It would be incorrect to draw an analogy to those cases in which partial ingredients played an important role in the classification of chemical mixtures. See for example, *United States* v. *Aceto Chemical Co., Inc.* 64 CCPA 78, C.A.D. 1186, 553 F. 2d 685 (1977); *United States* v. *Cavalier Shipping Co., Inc.*, 60 CCPA 152, C.A.D. 1103, 478 F. 2d 1256 (1973). In those cases the partial or minute ingredients were themselves described in the tariff schedules and hence their ability to force the remaining ingredients out of the provision where they would normally fit had to be closely considered. Here the defendant would have the classification of the dominant material defeated by an "ingredient" which is not described in the tariff schedules and has no comparable special claim to importance.

In the court's opinion the best analogy is offered by those cases in which modifications of basic objects or articles did not remove them from eo nomine descriptions. Thus, in *National Lead Co.* v. *United States*, 51 Cust. Ct. 13, C.D. 2407 (1963), the use of cement to make briquettes out of antimony ore did not remove the importation from classification as antimony ore. Nor did the binding together of ground wood charcoal with starch, remove an importation from classification as wood charcoal. *Britton & Co.* v. *United States*, 41 Cust. Ct. 64, C.D. 2021 (1958). In the same manner the treatment of cedar fence posts with pigmented wood preservative did not convert them from posts to lumber. *Arthur J. Humphreys, Inc.* v. *United States*, 74 Cust. Ct. 73, C.D. 4588, 394 F. Supp. 1395 (1975), *aff'd*, 63 CCPA 75, C.A.D. 1168 (1976). When, in addition to these analogous situations, it is considered that respected, published authorities in the field of gemmology indicate that impregnation of turquoise with substances intended to harden it and improve its color is a recognized practice, the court's legal conclusion is reinforced by the realities of the trade.

The court concludes that stabilized turquoise remains turquoise, is a semiprecious stone within the meaning of that term, and is properly described as such in item 520.39 of the TSUS.

Judgment will enter accordingly.