(C.D. 4876)

F. W. MYERS & CO., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 77-8-01386

---

(Dated October 1, 1980)

*Rivkin, Sherman and Levy* (*Mary Christine Carty* on the brief) for the plaintiff.
*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Sidney N. Weiss,* on the brief), for the defendant.

### MEMORANDUM OPINION AND ORDER

WATSON, Judge: Plaintiff has moved for summary judgment that the proper tariff classification of an herbicide known as "Sencor 50 Percent Wettable Powder" is as a mixture not specially provided for under item 432.00 of the Tariff Schedules of the United States (TSUS), and that it is dutiable at the rate of 5 percent ad valorem. Defendant, relying on the presence in the imported mixture of a benzenoid wetting agent, classified the importation under item 409.00 of the TSUS as a mixture in part of a product provided for in subpart C, part 1, schedule 4; dutiable at 3.5 cents per pound plus 22.5 percent ad valorem.

The relevant statutory provisions are as follows:

### STATUTES INVOLVED

Tariff Schedules of the United States, 19 U.S.C. 1202:

\*      \*      \*      \*      \*      \*      \*

GENERAL HEADNOTES AND RULES OF INTERPRETATION

\*      \*      \*      \*      \*      \*      \*

9. *Definition.*—For the purposes of the schedules, unless the context otherwise requires—

\*      \*      \*      \*      \*      \*      \*

(f) the terms "of", "wholly of" \* \* \* "in part of" and "containing", when used between the description of an article and a material \* \* \* have the following meanings:

\*      \*      \*      \*      \*      \*      \*

(iv) "in part of" or "containing" mean that the article contains a significant quantity of the named material.

With regard to the application of the quantitative concept specified in subparagraphs (ii) and (iv) above, it is intended that the de minimis rule apply.

SCHEDULE 4—CHEMICALS AND RELATED PRODUCTS

Schedule 4 headnotes:

\*      \*      \*      \*      \*      \*      \*

3. (a) The term "mixture," as used in this schedule means substances consisting of two or more ingredients (i.e., elements or compounds), whether occurring as such in nature, or whether artificially produced * * * which, however thoroughly comingled, retain their individual chemical properties and are not chemically united. * * *

## PART 1. BENZENOID CHEMICALS AND PRODUCTS

*Part 1 headnotes*

1. Except as specifically set forth in the headnotes to other parts of this schedule, all products described in this part shall be classified hereunder even if more specifically described elsewhere in this schedule. * * *

\*       \*       \*       \*       \*       \*       \*

### Subpart C—Finished Organic Chemical Products

Products obtained, derived, or manufactured in whole or in part from any product provided for in subpart A or B of this part:

\*       \*       \*       \*       \*       \*       \*

| | | |
|---|---|---|
| 405.35 | Products * * * chiefly used or any one or combination of the following purposes: as detergents, wetting agents, emulsifiers, dispersants, or foaming agents___ | 1.7¢ per lb. + 12.5% ad val. |

\*       \*       \*       \*       \*       \*       \*

| | | |
|---|---|---|
| 409.00 | Mixtures in whole or in part of any of the products provided for in this subpart__ | 3.5¢ per lb. + 22.5% ad val. |

\*       \*       \*       \*       \*       \*       \*

## PART 2. CHEMICAL ELEMENTS, INORGANIC AND ORGANIC COMPOUNDS, AND MIXTURES

*Part 2 headnotes*

1. This part covers chemicals, except those provided for elsewhere in this schedule, and those specially provided for in any of the other schedules.

\*       \*       \*       \*       \*       \*       \*

### Subpart E—Chemical Mixtures

| | | |
|---|---|---|
| 432. 00 | Mixtures not specially provided for_____ | 5% ad val., but not less than the highest rate applicable to any component material. |

This herbicide was manufactured in Canada and imported in powder form in 1975 by the plaintiff customhouse broker. It kills

weeds by penetrating into their roots before they emerge from the ground and then inhibits the process of photosynthesis by which they would ordinarily grow. The recommended application is by means of mixing with water and spraying on the bare ground before or after planting of the desired crop. The benzenoid wetting agent constitutes less than 1 percent of the importation and aids the dispersal of the herbicide in water by reducing the surface tension between the powder and the water. Although it is not recommended, the powder can be applied in dry form to the ground, and reliance placed on soil moisture and rainfall for penetration.

Defendant has tried to create issues of fact and has attempted to avoid the impact of the decision in *United States* v. *Aceto Chemical Co., Inc.*, 64 CCPA 78, C.A.D. 1186, 533 F. 2d 685 (1977), affirming *Aceto Chemical Co., Inc.* v. *United States*, 75 Cust. Ct. 167, C.D. 4625, 408 F. Supp. 1389 (1975).

In that case the classification of a fungicide (containing less than 1 percent of a benzenoid wetting agent) as a mixture "in part" of a benzenoid product was held to be incorrect. While the appellate court recognized the general congressional intent that mixtures be assessed at the highest rate possible, it held that the intent was not to magnify the importance of minute ingredients whose function was exhausted before the principal ingredient began to operate.

Proper classification as "in part" required that the partial ingredient upon which classification is premised, perform the principal function, in which case its relative quantity was immaterial. See *Northam Warren Corp.* v. *United States*, 60 CCPA 117, C.A.D. 1092, 475 F. 2d 647 (1973). If this functional test was not satisfied then the only other justification for allowing a partial ingredient to control classification was its presence in a quantity which had some independent commercial significance.

The "issues of fact" which defendant asserts in this action regarding the quantity of the benzenoid wetting agent and its greater importance in this particular method of application are really quarrels with the result in the *Aceto* case. The determinative facts here are not in dispute. The quantity of benzenoid wetting agent is less than 1 percent of the importation and has no independent commercial significance. The wetting agent is not an herbicide. It helps the active agent get down to the roots but it does not participate in the inhibition of the weeds' photosynthesis.

In short, the decision in the *Aceto* case is stare decisis. It continues to be incorrect to classify a mixture as being "in part" of a minute benzenoid ingredient whose subsidiary function is exhausted before the principal ingredient begins to work, it is therefore

ORDERED, that plaintiff's motion for summary judgment be granted and, it is further

ORDERED, that the appropriate customs official reliquidate the entries covered by this civil action and classify the merchandise involved under item 432.00 of the TSUS, as a mixture not specially provided for, dutiable at the rate of 5 percent ad valorem.