**BANTAM TRAVELWARE, DIVISION of PETER'S BAG CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court Nos. 85–11–01552, 86–01–00038.**

United States Court of
International Trade.

Dec. 3, 1987.

Siegel, Mandell & Davidson, P.C., Judith M. Barzilay and Brian S. Goldstein, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civil Div., Dept. of Justice, New York City, James A. Curley, for defendant.

## OPINION

TSOUCALAS, Judge.

This action is before the Court for decision after trial. The subject merchandise consists of luggage with braided material either in the handles or tie-straps. Plaintiff challenges the Customs Service's classification of its importations as luggage not "in part of braid" pursuant to item 706.41, TSUS. In order to prevail, plaintiff must prove, see 28 U.S.C. § 2639(a)(1) (1982), that the goods are "in part of braid" pursuant to item 706.34, TSUS.

As explained in an earlier opinion,[1] the Court must determine whether the luggage contains a "significant quantity" of braid. *Bantam,* 11 CIT at ——, Slip. Op. 87–22 at 3–4 (citing General Headnote 9(f)(iv), TSUS). A significant quantity is synonymous with a commercially significant quantity. *Id.* at ——, Slip. Op. 87–22 at 3 n. 1 (quoting Tariff Classification Study, Submitting Report, November 15, 1960 at 14).

### TRIAL

At trial, it was established that braided material is employed in the luggage handles in the form of a sheath surrounding a core of non-braided material. The outer surface of the handle is formed by a vinyl or textile material which completely covers the braided core. In the tie-tapes (tie-straps), which hold the contents of the luggage in place, braided material covers a rubber or spandex elastomer. It is undisputed that the use of braid is not advertised by plaintiff to consumers and that the

---

**1.** The reader is urged to consult this Court's opinion in *Bantam Travelware, Div. of Peter's Bag Corp. v. United States,* 11 CIT ——, Slip. Op. 87–22 (Feb. 27, 1987) [Available on WESTLAW, 1987 WL 7236] (denying cross-motions for summary judgment) for a more complete exposition of the background of this case.

presence of braid is not observable to the naked eye.

Plaintiff offered the testimony of several witnesses in support of its contention that the braid is a commercially significant addition to its luggage. For example, Abraham Kleinman, Treasurer of Peter's Bag Corporation, testified that plaintiff began to incorporate braided materials into its luggage because:

> braid was stronger than any wadding you could put into a handle. Braid had features which we could talk up to buyers. Not only was it stronger but, in the handle, it gave it softness, it gave it form, and we decided we were going to use braid in our handles, even though it cost more, as a selling feature.
>
> We also decided we wanted to have braided tie tapes because it laid better in the bag when you covered your clothes or you tied it over your clothes. It was stronger, and your clothes were in place, and we decided to use it.

Trial Transcript at 22 (hereinafter "Tr. at ——"). Mr. Kleinman also explained that plaintiff sought to take advantage of the lower tariff duty rates on luggage containing braided materials. *Id.* at 26. The witness further testified that the use of braid was expensive and therefore a decision was made not to use braid in both the handles and the tie-tapes within a given style of luggage. *Id.* at 24–25.

Defendant's witnesses denied that the braid is a commercially significant feature of the luggage. Kevin Gorman, a National Import Specialist for Customs, testified that there was no discernible advantage to the use of braid in plaintiff's importations. For example, he explained that braided elastic tie-tapes perform as well as non-braided elastic tie-tapes. *Id.* at 188. Richard Lutzer, Textile Branch Chief of the Customs Laboratory, who testified as an expert on textiles and the use of textiles in commercial products, explained that a braided luggage handle would offer the same comfort and have the same shape as a non-braided handle. *Id.* at 234–35.

## THE PARTIES' CLAIMS

Plaintiff contends that to be "commercially significant the braid must be func-

tional or it must add to the saleability of the luggage." *Plaintiff's Post–Trial Brief* at 3–4. Briefly stated, plaintiff claims that it has proven that braid in the luggage handles and tie-tapes performs "functions simultaneous with and directly related to the overall purpose of the luggage itself and because the presence of the braid in the handles and the tie-tapes adds to the saleability of the luggage to the consumer." *Id.* at 27. Although consumers are unaware of the presence of the braid, plaintiff alleges that braid improves the luggage, thereby enhancing its marketability.

Defendant argues that the "advantages claimed for the braided handle or tie strap do not enhance the function and operation of the luggage, are not advertised by Peter's Bag, are not known by consumers, and are superfluous." *Defendant's Post–Trial Brief* at 7. Articles of luggage with braided features perform the same function in the same manner as those without braided features. *Id.* at 10–11.

Defendant suggests that plaintiff began to construct certain importations with braid in an effort to avoid quota restraints and to benefit from lower duty rates on luggage in part of braid. In this regard, defendant notes that the incorporation of braided materials into the subject merchandise roughly coincided with the institution of the aforementioned quota. Furthermore, defendant stresses that the decision to employ braid either in the luggage handles or tie-straps, but not in both, undermines plaintiff's assertion that the features at issue are commercially significant. According to defendant, written communications regarding the fabrication of the goods, which were directed to plaintiff's representatives in Korea and Taiwan, make no mention of the commercial benefits of braid, and reveal plaintiff's intent to employ only enough braid to obtain favorable tariff treatment. *See id.* at 3–4.

## THE "IN PART OF" PROVISION

A bi-partite test has been developed with reference to mixtures of benzenoid chemicals to assess whether such mixtures should be considered "in part of" a subsidi-

ary ingredient. Under the "functional-quantitative" test, lesser ingredients may properly control the classification of the mixture as a whole where they play a direct role in the primary function of the mixture. *Compare Northam Warren Corp. v. United States,* 60 CCPA 117, 120–21, C.A.D. 1092, 475 F.2d 647, 650 (1973) *with United States v. Aceto Chem. Co.,* 64 CCPA 78, 83, C.A.D. 1186, 553 F.2d 685, 688–89 (1977). Alternatively, a mixture may be said to be "in part of" the lesser ingredient where that chemical is present in an amount which has independent commercial significance. *See F.W. Myers & Co. v. United States,* 85 Cust.Ct. 83, 86, C.D. 4876 (1980).

In *Genender Wholesale v. United States,*[2] however, the court failed to rely explicitly on the functional-quantitative analytic framework in evaluating a claim of commercial significance. The issue presented in *Genender* was whether brass watch cases, coated with nickel, which in turn were plated electrolytically with approximately two milligrams of gold, "contained"[3] gold. The court premised its conclusion that gold was present in a commercially significant amount on the following findings:

  (a) that the presence of a yellow color imparted a quality of "richness" which enhanced saleability of the watch cases;
  (b) that electroplating of gold was the only commercial means by which the desired yellow color could be imparted to the watch cases and application of a lesser quantity of gold would not produce that color;
  (c) that the presence of gold served to inhibit tarnish and rust;
  (d) that the use of gold in a similar manner was standard in the commercial costume jewelry industry; and,
  (e) that the cost of applying the gold represented 25–30% of the value of the imported article.

*See Genender,* 1 CIT at 281–82, 520 F.Supp. at 280–81. It is also useful to note that the trial court characterized the evidence supporting its findings as unrebutted. *See id.* at 280, 520 F.Supp. at 280.

## DISCUSSION

The Court is guided in its analysis of a claim of commercial significance by the approach adopted in *Genender Wholesale.* Accordingly, in the context of the present case, the Court directs its attention to the evidence adduced regarding the commercial utility of the quantity of braided material in the subject merchandise, its effect on saleability, and the relevant trade's recognition of the use of braid in the fabrication of luggage. After consideration of all of the evidence and after evaluation of the credibility of the witnesses offered by both parties, the Court is persuaded that plaintiff has failed to prove that braided materials are present in a commercially significant quantity in the subject importations.

Plaintiff has ascribed a number of benefits to the use of braid in the subject merchandise, including improvements in strength, comfort, flexibility, and elasticity. Defendant's witnesses, however, offered highly credible testimony rebutting plaintiff's assertions with regard to the advantages of braided construction of both the luggage handles and tie-tapes. In substance, they testified that the utility of luggage, with or without the braided features at issue here, would be the same. They also testified that consumers would not identify the presence of braid nor would they perceive any beneficial effects attributable to the use of braid.

Plaintiff has failed to explain precisely how the allegedly superior physical characteristics of braid translate into any advantage of demonstrable commercial significance that is desired or recognized by consumers. Testimony regarding the performance of braid in laboratory tests, or

---

**2.** 1 CIT 278, 520 F.Supp. 278 (1981), *aff'd,* 69 CCPA 146, 676 F.2d 672 (1982). The Court of Customs and Patent Appeals adopted the lower court opinion except for "references therein to the cost of plating as affecting the conclusion of commercial significance." *Genender,* 69 CCPA at 147, 676 F.2d at 672.

**3.** The terms "in part of" and "containing" have identical meanings. *See* General Headnote 9(f)(iv), TSUS.

that braided features "work better," Tr. at 102 (testimony of Robert Beaulieu, Professor at the Fashion Institute of Technology), is insufficient to establish that the use of braid produces any meaningful advantage relative to the actual performance or appearance of the product. For example, plaintiff insists that braid imparts qualities such as compressibility or softness to the handles, and elasticity to the tie-tapes. Notwithstanding those claims, there is credible evidence in the record indicating that the "feel" of the handles, and the stretchability of the tie-tapes, are influenced primarily by the inner handle core and the elastomer, respectively, and not by the presence of braid.

The Court is also unconvinced that plaintiff has proven that the use of braided materials adds to the saleability of the luggage. There is no proof that plaintiff is fulfilling a consumer preference in using braided materials in its luggage or even that consumers are aware of the use of such materials. Despite generalized assertions that the presence of braid contributes to "product integrity and product appearance" and therefore "makes it easier to sell" the product, Tr. at 67 (testimony of Stephen Gardy, Vice President of Peter's Bag Corporation), there is no tangible indication of increased sales of braided luggage or of a recognized consumer demand for such luggage.

With reference to the trade recognition issue, the Court finds the evidence to be inconclusive. While testimony was offered on behalf of plaintiff that other manufacturers employed braided materials in their luggage,[4] it is significant that neither Mr. Gorman nor Mr. Lutzer, despite their knowledge of the industry, was aware of any commentary regarding the alleged benefits of braided construction. In any event, plaintiff's proffered evidence on this issue does not overcome its failure to adequately demonstrate the commercial utility of braid as used in the instant importations.

The Court believes that plaintiff's reliance on the result in *Genender* is misplaced given the factual distinctions between that case and the instant one. In *Genender*, the trial court apparently found the uncontroverted testimony regarding increased saleability and trade recognition to be persuasive. Furthermore, the importer, in employing the only commercially practical method of applying gold to the watch cases, was ostensibly fulfilling a clearly demonstrated consumer preference for yellow watch cases. In contrast, for the reasons outlined earlier, plaintiff's offer of proof in this case falls far short of that made in *Genender*.

In concluding that plaintiff has not proven its claim of commercial significance, the Court cautions that it does not rely on defendant's allegation regarding the alleged motive for the incorporation of braided material into the luggage. It has long been recognized that "an importer has the right to fashion his merchandise so that it shall be assessed with duty at the lowest rate." *Michaelian & Kohlberg, Inc. v. United States*, 22 CCPA 551, 557 (1935). Plaintiff's burden in this case is to prove that a material is present in significant quantity. That burden is not affected by its motive in constructing its goods in a particular way.

Finally, the Court does not interpret *Genender* as requiring that a feature be visible in order to be considered commercially significant. Nor does the instant decision impose such an inflexible rule. Under certain circumstances, a feature's visibility may facilitate the attempt to prove its effects on saleability. The lack of visibility, however, should not, standing alone, defeat a properly supported claim of commercial significance.

## CONCLUSION

Plaintiff has failed to prove, by a preponderance of the credible evidence, that the

**4.** Joseph Berman, General Manager of Henry Rosenfeld Luggage Company ("Rosenfeld"), testified that his company, as well as others, imported braided luggage. In fact, he claimed that, on a particular product line, Rosenfeld only employed braided construction. This assertion was undermined on cross-examination, however, when he was confronted with a particular article from that luggage line which did not contain any braid. He explained this discrepancy by contending that the article had not been made to specification. *See* Tr. at 131, 133–34.

subject importations are "in part of braid" within the meaning of the Tariff Schedules. The Court is therefore compelled, in this case, to sustain the classification of the merchandise by the Customs Service.

## JUDGMENT